Winnie L. SCHULZE and Jason
C. Schulze and Chad J.
Schulze, Plaintiffs,

v.

LEGG MASON WOOD WALKER,
INC., Defendant.

Civ. A. No. 93–82J.

United States District Court,
W.D. Pennsylvania.

Sept. 14, 1994.

Loreen M. Kemps, Emerick & Kemps, Duncansville, PA, for plaintiffs.

Mark S. Stewart, Robert R. Baron, Jr., Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, for defendant.

## OPINION

D. BROOKS SMITH, District Judge.

■ Winifred, Jason, and Chad Schulze (the "plaintiffs") seek compensatory and punitive damages from Legg Mason Wood Walker, Inc. ("Legg Mason"), an investment brokerage firm, for selling assets in stock investment accounts held jointly by the plaintiffs and Kenneth Schulze, a delinquent taxpayer, and forwarding the proceeds to the IRS. Legg Mason acted in response to an IRS-issued levy on property owned by Kenneth Schulze.

This action is before me on Legg Mason's notice of removal and motion to dismiss. I find that removal is proper and, further, that the complaint fails to state a claim on which relief can be granted. Accordingly, I will grant Legg Mason's motion to dismiss.

## I. FACTS

Kenneth Schulze held three joint stock investment accounts at Legg Mason. One account was registered jointly to Kenneth and Winifred Schulze, the second to Kenneth and Jason Schulze, and the third to Kenneth, Jason, and Chad Schulze. Each account was governed by a Discretionary Account Agreement. The plaintiffs contend that each Agreement, which authorized Legg Mason to trade on the account, established a principal-agent fiduciary relationship between the account owners and Legg Mason. Complaint, ¶¶ 9, 48, 69, and Exh. A attached thereto.

In December 1991 Legg Mason received a Notice of Levy stating that Kenneth Schulze owed the IRS $4537.49 in back taxes and penalties. Complaint, ¶ 73, and Exh. B attached thereto. The Notice stated that "Chapter 64 of the Internal Revenue Code provides a lien for the above tax and statutory additions," and demanded that Legg Mason forward to the IRS a check for the amount of Kenneth Schulze's debt. Exh. B to the Complaint. After receiving another Notice of Levy and further correspondence from the IRS, Legg Mason froze the assets

in the three joint accounts and, eventually, sold them and forwarded the proceeds to the IRS. Complaint, ¶¶ 74, 82, 87, 96, and Exhs. C–G attached thereto. The plaintiffs allege that Legg Mason acted without giving them prior notice, much less obtaining their consent. Complaint, ¶¶ 82, 87, 96. The plaintiffs maintain that Legg Mason's failure to obtain their consent before selling the jointly owned assets was tortious.

On February 26, 1993, the plaintiffs filed a complaint in the Court of Common Pleas of Cambria County alleging three state-law causes of action: conversion, breach of fiduciary duty of good faith and loyalty, and breach of fiduciary duty of timely notice. In response, Legg Mason filed a notice of removal, an amended notice of removal, and a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II. DISCUSSION

According to the motion to dismiss, the Internal Revenue Code authorized Legg Mason's actions and, indeed, absolves it from any liability. Legg Mason argues that the plaintiffs' sole remedy is to sue the IRS. The specific federal law on which Legg Mason relies is the civil enforcement provision found in 26 U.S.C. § 7426(a)(1), and the immunity provision found in 26 U.S.C. § 6332(e). Those sections provide:

> If ... property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a)(1).

> Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has

been made who, upon demand by the [IRS], surrenders such property or rights to property (or discharges such obligation) to the [IRS] (or who pays a liability under subsection (d)(1) [1]) *shall be discharged from any obligation or liability to* the delinquent taxpayer and *any other person* with respect to such property or rights to property arising from such surrender or payment.

*Id.* § 6332(e) (emphasis added). This Court, of course, lacks jurisdiction to decide the motion to dismiss unless removal is proper. Therefore, I will first address the jurisdiction issue.

## A. REMOVAL JURISDICTION

Removal is governed by 28 U.S.C. § 1441. Section 1441(a) provides that removal is proper if the district courts have original jurisdiction over the action. Because the requirements for diversity jurisdiction are not met here,[2] original jurisdiction must rest on a federal question. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Krashna v. Oliver Realty, Inc.,* 895 F.2d 111, 113 (3d Cir.1990).

Federal-question jurisdiction exists over actions "arising under" federal law. 28 U.S.C. § 1331. Whether an action "arises under" federal law is governed by the well-pleaded complaint rule, which requires that a federal question be presented on the face of the complaint. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429; *Krashna,* 895 F.2d at 113. If a well-pleaded complaint affirmatively relies on state law alone, and federal law arises only as an anticipated defense, the action is not removable. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *Allstate Ins. Co. v. 65 Sec. Plan,* 879 F.2d 90, 93 (3d Cir.1989). "[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is

---

**1.** Subsection (d)(1) provides a penalty for any person who refuses to surrender property levied upon by the IRS. *See* 26 U.S.C. § 6332(d)(1).

**2.** Although the parties are diverse, the amount in controversy, as judged by the face of the complaint, *see Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d

890 (1961), does not exceed $50,000. Plaintiffs demand $8,657.76 in compensatory damages plus punitive damages equal to three times that amount, for a total of only $34,631.04. Therefore, the requirements of 28 U.S.C. § 1332 are not met.

anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430.

■ There exist, however, two exceptions to the well-pleaded complaint rule. First, under the doctrine of complete preemption, "[o]n occasion ... the pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). Second, a "case might still 'arise under' the laws of the United States if a well-pleaded complaint established that [plaintiffs'] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). Legg Mason invokes both these exceptions. *See* Amended notice of removal, ¶¶ 4(a), 4(b). I will address the arguments in turn.

*Are Plaintiffs' State–Law Claims Completely Preempted by Federal Law?*

■ "The complete preemption doctrine holds that 'Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character.'" *Railway Labor Executives Ass'n v. Pittsburgh & L.E.R.R.*, 858 F.2d 936, 939 (3d Cir.1988) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)). "In such cases, 'any complaint that comes within the scope of the federal cause of action [created by the federal statute] necessarily "arises under" federal law' for purposes of removal based on federal question jurisdiction." *Id.* (quoting *Franchise Tax Bd.*, 463 U.S. at 24, 103 S.Ct. 2841). Ordinary preemption, which governs whether federal or state substantive law controls an ostensibly state-law claim filed in either federal or state court, differs from complete preemption, which governs not only

that question but also whether such a claim filed in state court is removable to federal court. *Krashna v. Oliver Realty, Inc.*, 895 F.2d 111, 114 n. 3 (3d Cir.1990). Simply because a defendant may ultimately prove that a plaintiff's state-law claim is preempted under federal law (and therefore must be dismissed) does not establish that the claim is removable to federal court. *Id.* (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398, 107 S.Ct. 2425, 2432–33, 96 L.Ed.2d 318 (1987); *Railway Labor*, 858 F.2d at 941). This Court is keenly aware that complete preemption "operates in a very narrow area." *Railway Labor*, 858 F.2d at 942.

The Third Circuit has set out a two-part test to determine whether a state-law claim is completely preempted by federal law. First, the civil enforcement provision of the allegedly preemptive federal statute must "create a federal cause of action vindicating the same interest that the plaintiff's cause of action seeks to vindicate." *Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90, 93 (3d Cir.1989) (citing *Railway Labor*, 858 F.2d at 942–43); *accord Krashna*, 895 F.2d at 114. Second, there must be "affirmative evidence of a congressional intent to permit removal despite the plaintiff's exclusive reliance on state law." *Allstate*, 879 F.2d at 93 (citing *Railway Labor*, 858 F.2d at 942–43); *accord Krashna*, 895 F.2d at 114.

Arguing that the first requirement is met here, Legg Mason contends that the civil enforcement provision found in 26 U.S.C. § 7426 vindicates the same interest that the plaintiffs seek to vindicate in their state-law claims—their interest in getting back their property. But section 7426 creates a cause of action against the federal government only, not against a third party who surrenders levied property. Because the plaintiffs in this case have chosen to sue the surrendering third party rather than the government, arguably section 7426 does not vindicate the same interest as does plaintiffs' state-law claims. *Cf. Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560–61, 88 S.Ct. 1235, 1237–38, 20 L.Ed.2d 126 (1968) (holding that plaintiff's state-law claim was completely preempted under federal statute, even though relief sought—an injunction—was not

available under the federal statute); *Railway Labor*, 858 F.2d at 942 (holding that federal statute did not vindicate same rights as did plaintiff's state-law claims because it did not create a cause of action in favor of someone in plaintiff's position). I need not, however, make that determination, because it is clear that the second requirement of the two-part test is not met.

■ The complete preemption doctrine does not apply unless "there is a *clear* indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Railway Labor*, 858 F.2d at 942 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66, 107 S.Ct. 1542, 1547–48, 95 L.Ed.2d 55 (1987)) (emphasis added). Significantly, "the relevant congressional intent [must be] not an intent that the statute should displace state law, but rather an intent that claims purportedly based on state law be removable." *Id.* at 941 (citing *Metropolitan Life*, 481 U.S. at 67–68, 107 S.Ct. at 1548 (Brennan, J., concurring)). Understandably, this sort of congressional intent is rarely expressed in a statute or the legislative history behind it. Indeed, the Supreme Court has found the expression of such congressional intent in—and therefore found complete preemption under—the civil enforcement provisions of only *two* federal statutes: section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 n. 5 (7th Cir.1992).

In finding complete preemption under § 301(a) of the LMRA, the Supreme Court discerned the requisite congressional intent from the language of the statute itself:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a), *quoted in Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987); *see also Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 559, 88 S.Ct. 1235, 1236–37, 20 L.Ed.2d 126 (1968).[3]

In finding complete preemption under § 502(a) of ERISA,[4] the Supreme Court relied on the similarity between the language of § 502's jurisdictional provision and the language of § 301(a) of the LMRA, a House conference report, and remarks by senators who sponsored ERISA. The Court stated:

Even with a provision such as § 502(a)(1)(B) that lies at the heart of a statute with the unique preemptive force of ERISA, ... we would be reluctant to find that extraordinary pre-emptive power, such as has been found with respect to § 301 of the LMRA, that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. But the language of the jurisdictional subsection of ERISA's civil enforcement provision closely parallels that of § 301 of the LMRA. Section 502(f) [of ERISA] says:

"The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief

---

3. Not all state-law claims filed by parties subject to a collective bargaining agreement are completely preempted under § 301 of the LMRA. The complete preemption doctrine applies only to state-law claims that fall under § 301—i.e., claims that are "substantially dependent upon interpretation of the collective-bargaining agreement." *Caterpillar*, 482 U.S. at 395, 107 S.Ct. at 2431. *Compare Avco Corp.*, 390 U.S. at 561–62, 88 S.Ct. at 1237 (employer's state-law claim to enjoin a union from striking in violation of a "no strike" clause in the collective bargaining agreement was completely preempted), with *Caterpil-*

*lar*, 482 U.S. at 395–96, 107 S.Ct. at 2431 (state-law claims founded on plaintiffs' individual employment contracts, not collective bargaining agreement, were not completely preempted), and *Berda v. CBS, Inc.*, 881 F.2d 20 (3d Cir.1989) (same), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990).

4. Section 502(a) provides that a participant in an ERISA-governed plan, a plan beneficiary, or the Secretary of Labor may bring civil actions for certain types of relief. 29 U.S.C. § 1132(a).

provided for in subsection (a) of this section in any action." 29 U.S.C. § 1132(f).

Cf. § 301 of the LMRA, 29 U.S.C. § 185(a). The presumption that similar language in two labor law statutes has a similar meaning is fully confirmed by the legislative history of ERISA's civil enforcement provisions. The Conference Report on ERISA describing the civil enforcement provisions of § 502(a) says:

> "[W]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. *All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947.*" H.R.Conf.Rep. No. 93–1280, p. 327 (1974) (emphasis added).

No more specific reference to the *Avco* rule [of complete preemption] can be expected and the rest of the legislative history consistently sets out this clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA. For example, Senator Williams, a sponsor of ERISA, emphasized that the civil enforcement section would enable participants and beneficiaries to bring suit to recover benefits contrary to the terms of the plan and that when they did so "[i]t is

intended that such actions will be regarded as arising under the laws of the United States, in similar fashion to those brought under section 301 of the Labor Management Relations Act." 120 Cong.Rec. 29933 (1974). See also *id.*, at 29942 (remarks of Sen. Javits) (federal substantive law to "deal with issues involving rights and obligations under private welfare and pension plans").

*Metropolitan Life Ins. Co, v. Taylor,* 481 U.S. 58, 65–66, 107 S.Ct. 1542, 1547–48, 95 L.Ed.2d 55 (1987) (some citations omitted).[5]

Unless "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of [the statute] removable to federal court," the complete preemption doctrine does not apply. *Id.* at 66, 107 S.Ct. at 1548. For example, in a 1988 case the Third Circuit rejected an argument raised by the defendant railroads that the state-law claim of the plaintiff, a railroad labor association seeking a declaratory judgment that a sale of assets proposed by the railroads would violate state law, was completely preempted under either the Railway Labor Act or the Interstate Commerce Act. *Railway Labor Executives Ass'n v. Pittsburgh & L.E.R.R.,* 858 F.2d 936, 943 (3d Cir.1988). The appeals court ruled that the language and legislative history of neither statute contained "affirmative evidence" of congressional intent to permit removal of state-law claims such as the association's. *Id.* at 942.

I find that to be the case here as well. Neither the language of, nor the legislative history behind, 26 U.S.C. § 7426, the civil enforcement provision of the Internal Reve-

---

**5.** Not all state-law claims related to ERISA-covered benefit plans are completely preempted under § 502(a). The complete preemption doctrine applies only to state-law claims that fall under § 502(a)—i.e., § 502(a) must provide an express cause of action vindicating the same rights as those plaintiff seeks to vindicate in its state-law claim. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 25, 103 S.Ct. 2841, 2854–55, 77 L.Ed.2d 420 (1987). *Compare Metropolitan Life,* 481 U.S. at 67, 107 S.Ct. at 1548 (state-law claim for improper processing of a claim for benefits under a plan regulated by ERISA was completely preempted), *with Franchise Tax Bd.,* 463 U.S. at 26, 103 S.Ct. at 2855 (state-law claim by state tax authority to enforce

its levy against funds held in trust pursuant to an ERISA-covered employee benefit plan was not completely preempted, because § 502(a) does not provide a cause of action in favor of a state to enforce its rights), *and Allstate Ins. Co. v. 65 Sec. Plan,* 879 F.2d 90, 94 (3d Cir.1989) (insurance company's state-law claim for declaratory judgment that it was only secondarily liable for beneficiary's medical expenses because beneficiary was covered by ERISA-regulated plan and for declaratory judgment that it was entitled to indemnity or contribution from the plan was not completely preempted, because § 502(a) does not provide a cause of action in favor of a non-ERISA insurance company for indemnity or contribution from an ERISA plan).

nue Code on which Legg Mason relies, contains any "affirmative evidence" of congressional intent to permit removal of the type of state-law claims filed in this case.

Section 7426 creates a private cause of action in favor of persons (such as the plaintiffs) who claim an interest in property that has been sold pursuant to an allegedly wrongful levy. The statute provides that such persons "may bring a civil action against the United States in a district court of the United States"; it does not forbid such persons from suing third parties (such as Legg Mason) who surrender levied property to the IRS. Although such third parties are immune from liability under 26 U.S.C. § 6332(e), that is a separate statute. Section 6332(e), while providing Legg Mason with a defense to plaintiffs' claims, is not a civil enforcement provision and does not address jurisdiction or removal.

Here, unlike in *Metropolitan Life,* there exists no "presumption that similar language in two labor law statutes has a similar meaning," 481 U.S. at 65, 107 S.Ct. at 1547. Not only is the Internal Revenue Code, unlike the LMRA and ERISA, not a labor law statute, but also the language of § 7426 is different from that of § 301 of the LMRA and § 502(a) of ERISA. Further, the 1966 Senate Report for § 7426 contains no mention of removal or actions "arising under" federal law. *Cf. Metropolitan Life,* 481 U.S. at 65–66, 107 S.Ct. at 1547. Nor, unlike the House Conference Report for § 502(a) of ERISA, does it refer to § 301 of the LMRA.[6] Rather, the Senate Report indicates only that the purpose of § 7426 was to create a new cause of action which could be brought against the government by a party other than the delinquent taxpayer:

Present law is quite limited in the extent to which it takes into account the rights of third parties in the procedures set out in the tax laws for the collection of taxes from a taxpayer. Under present law, for example, the United States cannot be sued by third persons where its collection activities interfere with their property rights. This includes cases where the Government wrongfully levies on one person's property in attempting to collect from a taxpayer....

\* \* \* \* \* \*

Your committee believes where the Government levies on property which, in part at least, a third person considers to be his, he is entitled to have his case heard in court....

For the reasons given above, your committee's bill permits wrongful levy actions ... to be brought against the Government by nontaxpayers....

... [W]here a person claims the Government wrongfully levied upon his property to satisfy the tax liability of another, the bill provides that he may bring suit against the Government.

\* \* \* \* \* \*

Where a person brings a wrongful levy action ... the relief *the Federal district court* can grant is limited to one of the four types described below. [The Report goes on to list the four types of relief which "a court" may grant.]

S.Rep. No. 1708, 89th Cong., 2d Sess., pt. J (1966), *reprinted in* 1966 U.S.C.C.A.N. 3722, 3750–52 (emphasis added).

The Senate Report's sole reference to "the Federal district court" is simply insufficient to constitute clear evidence of congressional intent to permit removal of state-law wrongful levy actions brought by third parties who claim an interest in the levied property—particularly where, as here, the defendant is a party other than the United States. Nor is

---

**6.** I acknowledge that the drafters of the 1974 House Conference Report for § 502(a) of ERISA had the benefit of the Supreme Court's 1968 decision in *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the opinion credited with giving birth to the complete preemption doctrine, while the drafters of the 1966 Senate Report for § 7426 did not. Even if this distinction might cause a court to require less explicit evidence of congressional intent approving removal, *but see Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66, 107 S.Ct. 1542, 1547–48, 95 L.Ed.2d 55 (1987) (requiring *clear* evidence of congressional intent); *Railway Labor Executives Ass'n v. Pittsburgh & L.E.R.R.,* 858 F.2d 936, 942 (3d Cir.1988) (same), my holding would be the same, as I find *no* evidence that Congress intended to permit state-law claims of the type filed here to be removed under § 7426.

the legislative history behind 26 U.S.C. § 6332(e) any more enlightening. *See* S.Rep. No. 1708, 89th Cong., 2d Sess., pt. D(4) (1966) (no mention of removal or federal jurisdiction in discussion of original immunity provision, which protected only delinquent taxpayers), *reprinted in* 1966 U.S.C.C.A.N. 3722, 3740; S.Rep. 445, 100th Cong., 2d Sess. 4 (1988) (discussing "and any other person" language added to protect third parties in addition to delinquent taxpayers; Report states only that amendment was "meant to carry out the intent of Congress in enacting the original legislation"), *reprinted in* 1988 U.S.C.C.A.N. 4515, 4530. In the absence of explicit congressional intent approving removal, complete preemption does not apply.

*Do Plaintiffs' State–Law Claims Require the Resolution of a Substantial Question of Federal Law?*

■ Plaintiffs' primary claim is for conversion, which Pennsylvania law defines as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Shonberger v. Oswell,* 365 Pa.Super. 481, 484, 530 A.2d 112, 114 (1987) (citing *Stevenson v. Economy Bank,* 413 Pa. 442, 451, 197 A.2d 721, 726 (1964)). That a defendant acted without lawful justification is an element of a prima facie case of conversion, on which a plaintiff bears the burden of proof; it is not an affirmative defense. *See Smith v. Industrial Valley Title Ins. Co.,* 957 F.2d 90, 91–92 (3d Cir.) (applying Pennsylvania law), *cert. denied,* —— U.S. ——, 112 S.Ct. 3034, 120 L.Ed.2d 903 (1992); 7 Stuart M. Speiser et al., *The American Law of*

*Torts* § 24:1, at 710 (1990). Although the complete preemption doctrine is inapplicable, removal is appropriate if "it appears that some substantial, disputed question of federal law is a necessary element of [that] state claim[ ]"—namely, the existence or absence of lawful justification for Legg Mason's actions. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983); *United Jersey Banks v. Parell,* 783 F.2d 360, 368 (3d Cir.), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986); *see also Burda v. M. Ecker Co.,* 954 F.2d 434, 438 & n. 3 (7th Cir.1992) (citing *Franchise Tax Board* in support of the "artful pleading doctrine," court affirmed removal of claim which plaintiff had framed under state law only by omitting federal tax-law questions that were "essential to recovery"); *cf. Smith,* 957 F.2d at 93 (refusing to find federal-question jurisdiction where the relevant federal statute, 26 U.S.C. § 6045, provided no private cause of action[7]). Whether Legg Mason's actions were justified requires an interpretation of Section 6332(a), namely whether Legg Mason was "in possession of" or "obligated with respect to" any property of Kenneth Schulze. Accordingly, the conversion claim is removable under 28 U.S.C. §§ 1441(a) and 1331.

This Court has supplemental jurisdiction over plaintiffs' two other state-law claims because they are "so related" to the conversion claim that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Therefore, those claims are removable under 28 U.S.C. § 1441(a) as well.[8]

---

**7.** As is discussed at *B. infra,* Congress has declared that there be no state *or* federal private action against a third party who surrenders levied property because 26 U.S.C. § 6332(e) immunizes such a person from liability. Plaintiffs are suing defendant for complying with a duty to the IRS imposed by statute. Defendants have an immunity provided by statute. By contrast, in *Smith,* plaintiffs sued defendants for violating a duty to the *plaintiffs* imposed by statute. The Court of Appeals in *Smith* held that the relevant statute must provide a federal private cause of action for removal to be proper. *Cf. Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 817, 106 S.Ct. 3229, 3236–37, 92 L.Ed.2d 650 (1986) (denying removal of state-law negligence action alleging breach of section of Federal Food, Drug, and Cosmetic Act, for which viola-

tion Congress has created no private right of action). Additionally, the Court of Appeals noted in *Smith,* 957 F.2d at 94, that the state law cause of action asserted would have no impact on federal tax collection. It is apparent here that *exposing third parties levied upon by the IRS to state law claims arising from compliance with that levy could significantly burden federal tax collection.*

**8.** Interestingly, the relatedness of the two breach-of-duty (negligence) claims to the conversion claim makes them ineligible for removal under 28 U.S.C. § 1441(c), which provides for the removal of state-law claims joined with a "separate and independent" federal-question claim removable under 28 U.S.C. §§ 1441(a) and 1331. For

### B. *THE MOTION TO DISMISS*

■ Having determined that removal jurisdiction exists, this Court must rule on the motion to dismiss. Legg Mason maintains that the complaint fails to state a claim on which relief can be granted because its actions were permitted—indeed, *mandated*—by the Internal Revenue Code, and because the Code absolves Legg Mason from liability to "any person," including the plaintiffs. I agree.

The Code requires a party "in possession of" or "obligated with respect to" property on which the IRS has issued a levy to surrender that property unless it is "subject to an attachment or execution under any judicial process." 26 U.S.C. § 6332(a); *Congress Talcott Corp. v. Gruber,* 993 F.2d 315, 318 (3d Cir.1993). Compliance with Section 6332(a) renders a party immune from "any . . . liability to . . . any . . . person with respect to such property." 26 U.S.C. § 6332(e). In contrast, noncompliance subjects a party to penalty. *Id.* § 6332(d); *Congress Talcott,* 993 F.2d at 318.

■ A person who fails to comply with a tax levy under section 6332(a) has only two defenses. *Congress Talcott,* 993 F.2d at 319 (citing *United States v. National Bank of Commerce,* 472 U.S. 713, 721–22, 105 S.Ct. 2919, 2924–25, 86 L.Ed.2d 565 (1985)). First, he may argue that the levied property is already subject to judicial "attachment or execution," as provided in the statute. *Id.* (citing *National Bank of Commerce,* 472 U.S. at 721–22, 105 S.Ct. at 2925). The plaintiffs do not contend that this defense was available to Legg Mason. Second, he may argue that the levied property is not the taxpayer's "property or rights to property," as provided in the statute. *Id.* (citing *National Bank of Commerce,* 472 U.S. at 721–22, 105 S.Ct. at 2925). "Under the second defense, even if others claim an interest in the property and the taxpayer's interest may be quantified as but a modicum, the property remains subject to attachment by levy and must be surrendered until ultimate ownership can be resolved." *Id.* (citing *National Bank of Commerce,* 472 U.S. at 721–22, 105 S.Ct. at 2924–25). The plaintiffs concede that under Pennsylvania law Kenneth Schulze had, at a minimum, a "modicum" of rights in the levied joint accounts. Plaintiffs' Brief of Law Pursuant to Court Order of March 25, 1994, Docket No. 14, at 6. Accordingly, Legg Mason had no defense to section 6332(a), and was required to comply with the levy by surrendering to the IRS the assets in the levied joint accounts.

■ Although state law governed the nature of Kenneth Schulze's property interest in the levied accounts, "the state-law consequences of that definition are of no concern to the operation of the federal tax law." *National Bank of Commerce,* 472 U.S. at 723, 105 S.Ct. at 2925–26; *accord Congress Talcott,* 993 F.2d at 319. " '[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative,' and the tax consequences thenceforth are dictated by federal law." *National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925 (quoting *United States v. Bess,* 357 U.S. 51, 56–57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958)). In other words, the plaintiffs' state-law claims are preempted (*ordinary* preemption, not complete preemption) by federal law. Federal law immunizes Legg Mason for surrendering the levied property in which Kenneth Schulze had at least a "modicum" of rights. 26 U.S.C. § 6332(e). What plaintiffs may obtain recourse in federal court against the IRS, *see id.* § 6343(b), § 7426, or in state court against Kenneth Schulze, are questions not presented here.

An appropriate order follows.

### *ORDER*

AND NOW, this 14th day of September, 1994, consistent with the foregoing opinion, defendants' motion to dismiss (Docket No. 6)

---

a discussion on this apparent inconsistency between § 1367(a) and § 1441(c), and the questionable constitutionality of removing "separate and independent" state-law claims under § 1441(c), see David D. Siegel, " 'Supplemental' ('Pendent' or 'Ancillary') Jurisdiction As Affecting or Affected By Amended Subdivision (c)," *Commentary on 1988 and 1990 Revisions of Section 1441, reprinted in* 28 U.S.C.A. § 1441 commentary, at 12–13 (West 1994).

is hereby GRANTED. It is ORDERED that the complaint be dismissed with prejudice.