**Gerald E. KANE, Plaintiff,**

v.

**CAPITAL GUARDIAN TRUST COMPANY, Defendant.**

**No. 94–1528–MLB.**

United States District Court, D. Kansas.

Jan. 13, 1997.

---

John C. King, Law Office of John C. King, Ltd., Wichita, KS, for plaintiff.

Eric B. Metz, Triplett, Woolf & Garretson, Wichita, KS, for defendant.

### MEMORANDUM AND ORDER

BELOT, District Judge.

This matter comes before the Court on cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Docs. 31 & 38).

## I. STATEMENT OF THE CASE

This is an action by Gerald E. Kane ("Kane") against Capital Guardian Trust Company ("CGTC") for conversion and breach of fiduciary duty. Kane had failed to pay his 1989 income taxes, resulting in a statutory federal tax lien on all of his property. Kane's only asset of any significance was his individual retirement account ("IRA"), held by CGTC, which was invested in shares of two mutual funds. The Internal Revenue Service ("IRS") initiated levy proceedings to collect this tax deficiency by sending CGTC a Notice of Levy upon all of Kane's property interests, specifically including his IRA. Kane does not contest the validity of the Notice in any way. CGTC responded to the Notice by purporting to sell Kane's shares in the two mutual funds, and remitting the proceeds to the IRS.

Although Kane admits that CGTC had to comply with the levy, he argues that CGTC should have complied by sending the IRS actual share certificates in the mutual funds, rather than cash. By liquidating the IRA

and distributing cash, CGTC eliminated Kane's right to redeem his shares prior to the statutorily required tax sale, accelerated Kane's recognition of ordinary income on the distribution of his IRA, and therefore increased his ultimate income tax liability. Kane asserts that CGTC's liability is clear as a matter of law on the uncontroverted facts.

CGTC moves for summary judgment on several grounds. First, CGTC argues that Kane's IRA constituted a cash equivalent. As a result, no tax sale was required and, therefore, service of the Notice of Levy divested Kane of his entire ownership interest, including his right to redeem. CGTC's actions, therefore, did not injure Kane in any way. Second, CGTC argues that 26 U.S.C. § 6332(e) immunizes CGTC from any liability related to complying with the levy. Third, CGTC argues that several provisions of its contract with Kane provide complete defenses to Kane's action.

## II. STATEMENT OF UNCONTROVERTED FACTS

1. Kane was born July 22, 1924.

2. On or about December 31, 1975, Kane established a 26 U.S.C. § 408(a) individual retirement account with Capital Guardian Trust Company ("CGTC").

3. The parties executed a trust agreement ("Contract") to govern their relationship with respect to the IRA.

4. The Contract designated CGTC as the trustee of the IRA, and designated Kane as the beneficiary. Thus, CGTC was the legal owner, and Kane was the beneficial owner, of the corpus of the trust.

5. The original Contract contained the following provisions, among others:

a. "The Applicant, by the establishment of this Account, delegates to Capital Guardian Trust Company the power to make any retroactive or prospective modification of, or amendment to, the Account or Application which is necessary to conform the Account or Application to, or satisfy the conditions of, any law, governmental regulation or ruling, and any prospective amendment which is desirable for the administration of the Account, including the power to appoint a successor trustee and by doing so shall be deemed to have consented to each such amendment or modification. No amendment shall be made which will have the effect of allowing any part of the Account to be used for any purpose other than the exclusive benefit of the Participant or beneficiary."

b. "Any income taxes or other taxes of any kind whatsoever that may be levied or assessed upon or in respect to the Account shall be paid from the assets of the Account. Any transfer taxes incurred in connection with the investment and reinvestment of the assets of the Account, and all administrative expenses incurred by the Trustee in the performance of its duties, including fees for legal services rendered to the Trustee, shall either be deducted from contributions and charged to the Participant Account, or shall be paid by redeeming or surrendering the necessary assets credited to the Participant Account, unless otherwise defrayed by the Participant, but until paid shall constitute a lien upon the assets of the Account."

c. "The Trustee is authorized, however, to reserve such sum of money as it may deem advisable for payment of any liability constituting a charge on or against the assets of the Account or on or against the Trustee, with any balance of such reserve remaining after the payment of all such sums to be paid over to such successor."

d. "The Trustee shall furnish reports to the Participants setting forth receipts, investments, disbursements and other transactions required to be performed hereunder. Upon the expiration of 45 days after forwarding such report, the Trustee shall be forever released and discharged from all liability and accountability to anyone with respect to its acts, transactions, duties, obligations or responsibilities as shown in or reflected by such report, except with respect to such acts or transaction as to which the participant, or the beneficiary of the de-

ceased participant, shall have filed written objections with the Trustee within such 45–day period."

e. "The Trustee shall not be obliged to secure certificates for such shares, and in its discretion may permit such shares to remain unissued."

The parties do not contest the validity of these provisions, though CGTC asserts that the amendment appearing in Paragraph 6.c. replaced the provision appearing in Paragraph 5.d.

6. At various times after the execution of the Contract, CGTC purported to exercise its authority to amend the Contract under the provision appearing in Paragraph 5.a., above, to add the following provisions:

a. "Any income taxes or other taxes of any kind whatsoever that may be levied or assessed upon or in respect of the Account shall be paid from the assets of the Account. The compensation of the Trustee, any transfer taxes incurred in connection with the investment and reinvestment of the assets of the Account, and all administrative expenses incurred by the Trustee in the performance of its duties, including fees for legal services rendered to the Trustee, shall either be deducted from contributions and charged to the Account, or shall be paid by redeeming or surrendering the necessary assets credited to the account, unless otherwise paid by the Owner, but until paid shall constitute a lien upon the assets of Account."

b. "Payment by the Trustee made in good faith to any person who claims to be entitled to such payment pursuant to a designation by the Owner, the terms of the Account or applicable law shall relieve the Trustee of any further liability for such payment."

c. "The Trustee shall furnish an annual calendar year statement to the Owner setting forth receipts, investments, disbursements, and other transactions. Upon the expiration of 45 days after forwarding such statement, the Trustee shall be forever released and discharged from all liability and accountability to anyone with respect to its acts, transactions, duties, obligations, or responsibilities as shown in or reflected by such statements, except with respect to any such acts or transactions as to which the Owner or the beneficiary of a deceased Owner, shall have filed written objections with the Trustee within such 45 day period."

Kane controverts the validity of the amendments in b and c. He asserts that they exceed CGTC's authority to amend the Contract, because they were not made for the exclusive benefit of Kane, nor were they desirable for the administration of the trust. Rather, CGTC was merely attempting to limit its own liability.

7. Kane funded the IRA through initial and subsequent cash contributions, and CGTC invested this money into mutual funds.

8. On September 17, 1993, the IRA contained 5,290.870 shares of the Investment Company of America, and 286.202 shares of the Growth Fund of America.

9. Kane suffered losses in the commodities market which led to financial problems.

10. Kane knew that he owed federal and state income taxes for 1989, but did not pay them.

11. Kane pled guilty to federal bank fraud charges, and the court sentenced him to prison. He was incarcerated at El Reno, Oklahoma from either March or April of 1993 to June of 1994.

12. In August or September of 1993, CGTC received a Notice of Levy from the IRS.

13. The Notice read in part as follows:

The Internal Revenue Code provides that there is a lien for the amount that is owed. Although notice and demand that are required by the Code have been made, the amount owed has not been paid. This levy requires you to turn over to us this person's property and rights to property (such as money, credits, and bank deposits) that you have or which you are already obligated to pay this person. However, do

not send us more than the "Total amount due."

\* \* \* · \* . \* \*

Turn over any other money, property, credits, etc. that you have or which you are obligated to pay the taxpayer, when you would have paid it if this person had asked for payment.

\* \* \* \* \* \*

To respond to this levy:

1. Make your check or money order payable to Internal Revenue Service.

2. Write the taxpayer's name, identifying number(s), kind of tax and tax period shown on this form, and "LEVY PROCEEDS" on your check or money order (not on a detachable stub).

3. Complete the back of part 3 of this form and mail it to us with your payment in the enclosed envelope.

\* \* \* \* \* \*

14. The Notice of Levy was dated August 5, 1993, and purported to levy upon any and all of Kane's property or rights to property, specifically including individual retirement accounts, in the possession of CGTC.

15. CGTC had no valid defense to complying with the levy.

16. On September 17, 1993, in response to the Notice of Levy, CGTC sold a number of shares in the two mutual funds equivalent to the number of shares credited to Kane's IRA. CGTC sold these shares with the intent to liquidate Kane's account. This sale resulted in net proceeds of $107,706.25, which CGTC then remitted to the IRS in satisfaction of the Notice of Levy. The IRS applied this payment to Kane's 1989 federal tax liability.

17. CGTC reported this distribution as income to Kane by issuing two IRS 1099–R Forms for the 1993 tax year.

18. Kane has never paid any amount toward his 1989 income tax liability.

19. Kane's wife is Elsie Kane, and he has been married to her for forty-seven years.

20. In September or October of 1993, while Kane was incarcerated, Elsie Kane received a monthly or quarterly statement from CGTC noting that Kane's IRA account balance had dropped to zero. She relayed this information to Kane within about one week of receipt.

21. During Kane's incarceration Elsie Kane also received a year-end statement for the 1993 calendar year showing a zero account balance.

22. Kane had no other assets in September or October of 1993 from which he could have paid the IRS levy upon his IRA.

23. Elsie Kane wrote letters dated June 16 and July 27, 1994, to the IRS. In these letters she stated that Kane had no assets and she signed the letters in Kane's name.

24. Kane made no claim regarding CGTC's treatment of his account, or its payment to the IRS until August of 1994.

25. Around the time that CGTC liquidated the mutual fund shares and distributed the proceeds to the IRS, Kane's wife had assets in mutual funds and money market accounts valued at $175,415.70.

## III. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of a party who "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). "A fact is 'material' only if it might affect the outcome of the suit under the governing law." *MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1440 (10th Cir.1996) (quoting other sources). In appropriate circumstances, the movant may be able to meet this burden by informing the court of the basis for its motion, *Martin*, 3 F.3d at 1414, but without supporting "its motion with affidavits or other similar materials negating the opponent's claim," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986).

Once the moving party properly supports its motion, the non-moving party "may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993). "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273).

Summary judgment proceedings aim "to isolate and dispose of factually unsupported claims or defenses." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. The court's task is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986). This requires the court to view the evidence in the light most favorable to the non-moving party. *See Thrasher v. B & B Chem. Co.,* 2 F.3d 995, 996 (10th Cir. 1993). Summary judgment is inappropriate if there is sufficient evidence on which a trier of fact could reasonably find for the non-moving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991). These same standards must be applied individually to each motion for summary judgment facing the court. *Howell v. United States,* No. 95–5093, 1996 WL 153890, at *3, 81 F.3d 172 (10th Cir. Apr. 3, 1996) (unpublished).

## IV. ANALYSIS

CGTC asserts that 26 U.S.C. § 6332(e) provides it with immunity to Kane's suit. If true, resolution of this question would render all other issues moot. For this reason, the court shall consider it first.

### A. *The Levy*

■ The IRS assessed Kane for failing to pay his 1989 income taxes. At the moment the IRS issued the assessment, a lien arose on all of Kane's "property or rights to property" by operation of law. *See* 26 U.S.C. § 6322. "Property and rights to property" include every interest in property that a taxpayer may have, *United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565, 573 (1985), including intangible property, *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530, 542 (1977). In order to enforce its lien and collect Kane's unpaid tax liability, the IRS opted to proceed by administrative levy. The IRS may levy upon all of a taxpayer's property or rights to property that is subject to the IRS lien and not specifically exempted by statute. 26 U.S.C. § 6331(a).

■ An IRS levy is a provisional remedy and does not generally require any judicial intervention. *National Bank of Commerce,* 472 U.S. at 720, 105 S.Ct. at 2924, 86 L.Ed.2d at 574. The purpose of the levy is to prevent the dissipation of the levied upon property interests by immediately drawing them into IRS possession. *Id.* at 721, 105 S.Ct. at 2924, 86 L.Ed.2d at 574. To levy upon tangible property held by a third party, the IRS must provide notice of levy to the custodian of the property, pursuant to 26 U.S.C. § 6332(a), followed by physical seizure of the property. *G.M. Leasing Corp.,* 429 U.S. at 350, 97 S.Ct. at 627, 50 L.Ed.2d at 542. Where physical seizure is not possible, the property is posted or tagged. Intangible property, however, is not susceptible of physical seizure, posting or tagging. The IRS, therefore, effectuates a levy upon intangible property held by a third party through the single act of serving notice of levy. *Id.*

■ Notice of levy "gives the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government." *National Bank of Commerce,* 472 U.S. at 720, 105 S.Ct. at 2924, 86 L.Ed.2d at 574 (citations omitted). Addi-

tionally, the IRS steps into the taxpayers shoes, and acquires whatever rights to the property the taxpayer himself possessed. *United States v. Central Bank*, 843 F.2d 1300, 1305 (10th Cir.1988) (citing *National Bank of Commerce*, 472 U.S. at 725, 105 S.Ct. at 2927, 86 L.Ed.2d at 577).

### B. *Necessity of Compliance*

The Internal Revenue Code ("IRC") makes it clear that CGTC had no alternative but to honor the levy. "[A]ny person in possession of property or rights to property ... upon which a levy has been made shall, upon demand of the [IRS], surrender such property or rights." 26 U.S.C. § 6332(a). Substantial penalties await those who fail to comply. "Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by [the IRS], shall be [personally] liable ... in a sum equal to the value of the property or rights not surrendered ... together with costs and interest...." 26 U.S.C. § 6332(d)(1). Further, "any person ... who fails or refuses to surrender such property or rights to property without reasonable cause ... shall be liable for penalty equal to 50 percent of the amount recoverable under paragraph (1)." *Id.* § 6332(d)(2).

▮ In light of these provisions, the courts have uniformly held that there are only two defenses available to a third party served with an IRS notice of levy. *National Bank of Commerce*, 472 U.S. at 721–22, 105 S.Ct. at 2925, 86 L.Ed.2d at 575; *Schulze v. Legg Mason Wood Walker, Inc.*, 865 F.Supp. 277, 285 (W.D.Pa.1994). The first defense is that the third party is not "in possession of" either property or rights to property belonging to the delinquent taxpayer. *Id.* The second defense is that the taxpayer's property is "subject to a prior judicial attachment or execution." *Id.* A recent Seventh Circuit opinion held that even the invalidity of a levy would not provide reasonable cause to a bank to refuse to honor it, *Moore v. General Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir.1996), although this appears to contradict the IRS regulations on point, 26 C.F.R. § 301.6332–1(b)(2) ("The penalty described in this subparagraph is not applicable in cases where [a] bona fide dispute exists concerning ... the legal effectiveness of the levy."), and the legislative intent, S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.C.C.A.N. 3722, 3740 ("it is intended that a bona fide dispute over ... the legal effectiveness of the levy itself is to constitute reasonable cause...."). In any event, the critical need of the government promptly to secure its revenues justifies the imposition of this strict obligation to comply with the levy. *National Bank of Commerce*, 472 U.S. at 721, 105 S.Ct. at 2924, 86 L.Ed.2d at 574. The parties agree that CGTC had no valid defense, and, therefore, sub-sections 6332(a and d) required CGTC to surrender all of Kane's property or rights to property to the IRS upon demand. *See* 26 U.S.C. § 6332(a and d).

### C. *Statutory Immunity*

For years § 6332(d) forced third party custodians to walk a tight-rope between liability to the taxpayer, to third parties who might have an interest in the subject property, and to the IRS, with their success depending on whether the custodian could accurately gauge the precise, minimum level of compliance required by law. *Farr v. United States*, 990 F.2d 451, 456 (9th Cir.), *cert. denied*, 510 U.S. 1023, 114 S.Ct. 634, 126 L.Ed.2d 592 (1993). As a result, many custodians opted to litigate the validity and scope of levies, thereby increasing the cost and delaying the collection of federal revenues.

In response, Congress created statutory immunity for persons honoring an IRS levy:

> Any person in possession of ... property or rights to property ... who, upon demand by the [IRS], surrenders property or rights to property to the [IRS] shall be discharged from any ... liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

26 U.S.C. § 6332(e); *Farr*, 990 F.2d at 455–56. Thus, from the point of view of the custodian, "the effect of honoring the levy is the same as honoring a demand of the taxpayer." S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.C.C.A.N. 3722,

3740. The courts have interpreted this immunity generously. *See Farr,* 990 F.2d at 456.

### D. *Kane's Argument*

Despite this framework, Kane argues that CGTC was obliged to do no more than the bare minimum necessary to comply with the Notice. Anything less, he claims, is a breach of CGTC's fiduciary duties. For instance, Kane says that CGTC "could have and should have sent" his mutual fund shares to the IRS, rather than cash derived from the redemption of his shares (Doc. 31 at 4). Kane also says that CGTC was not required to respond, and should not have responded, to the Notice of Levy by liquidating his shares and distributing cash to the IRS (Doc. 42 at 2).

For three reasons, Kane's argument is not persuasive. First, it ignores the plain language and clear purpose of § 6332(e). The court has a duty to apply a statute according to its unambiguous terms. *Atlantic Richfield Co. v. American Airlines, Inc.,* 98 F.3d 564, 569 (10th Cir.1996). Kane claims that § 6332(e) is inapplicable because it only applies when a custodian surrenders a taxpayer's "property or rights to property." Kane interprets "property or rights to property" to mean the IRA or the mutual fund shares, not cash. Kane reaches this conclusion by ignoring the intangible nature of "rights to property," such as Kane's right to convert his IRA to cash.

Kane's right to convert the IRA to cash could not be physically transferred, for it had no corporeal form. Although memorialized in the Contract and enforceable at law, Kane's conversion right was merely an idea, a mutual understanding between Kane and CGTC. The only conceivable way that a custodian of such an intangible right to property can "surrender" it is by treating the IRS, rather than the taxpayer, as the possessor of that right. That is precisely what CGTC did when it complied with the IRS' request for a check. Thus, CGTC's conduct falls squarely within the language of § 6332(e).

The second reason for rejecting Kane's interpretation of the law is that it would render § 6332(e) meaningless. The court has a duty to construe the law in such a way as to give it meaning and effect. *Osborne v. Babbitt,* 61 F.3d 810, 813 (10th Cir.1995). The breach of a duty has always been excused if, but only if, performance would violate the law. *See Central Kansas Credit Union v. Mutual Guar. Corp.,* 102 F.3d 1097, 1101–03 (10th Cir.1996). This strict standard matches the construction that Kane places on § 6332. Thus, Kane's suggested reading must be rejected if § 6332(e) is to have any force or effect.

Finally, Kane's argument fails because it is contradicted by the record. CGTC strictly complied with the IRS' directions. The Notice of Levy declared that the levy pertained to all of Kane's money or property, specifically including any individual retirement account. By operation of law, service of the Notice immediately transferred constructive possession of Kane's IRA, and his rights to the IRA, to the IRS. The IRS stepped into Kane's shoes, and succeeded to his pre-levy rights. One of Kane's pre-levy rights to the IRA was his right to demand an immediate liquidation and distribution. Therefore, the IRS succeeded to this right.

Although unartfully drafted, the Notice directed CGTC to turn over any money that it was already obligated to pay to Kane if CGTC would have paid it to Kane had Kane asked for it.[1] In unambiguous language, the Notice directed CGTC to respond to the Notice by sending to the IRS a check or money order with the words "LEVY PROCEEDS" written on it.[2] CGTC had no alter-

---

1. *"Turn over any other money,* property, credits, etc. that you have or *which you are obligated to pay the taxpayer, when you would have paid it if this person had asked for payment."* (emphasis added).

2. *"To respond to this levy:*
   1. *Make your check or money order payable to Internal Revenue Service.*

   2. *Write* the taxpayer's name, identifying number(s), kind of tax and tax period shown on this form, and *"LEVY PROCEEDS" on your check or money order* (not on a detachable stub).

   3. Complete the back of part 3 of this form and mail it to us with your payment in the enclosed envelope."

native but to comply with the IRS' request that it send the IRS a check for the amount of money CGTC was obligated to pay to Kane upon demand.

The court has considered Kane's suggestions that CGTC "could have and should have sent [the mutual fund] shares" to the IRS (Doc. 31 at 4) and that it should have "merely [frozen] his account pending an opportunity for him to redeem his shares" (Doc. 42 at 5–6). Kane has failed to provide persuasive authority demonstrating (1) that CGTC could have taken these actions, (2) that taking these actions would have absolved CGTC of liability under § 6332(d), or (3) that § 6332(e) is inapplicable when these "alternatives" are available. As a result, Kane's arguments do not affect the court's analysis.

## V. CONCLUSION

CGTC surrendered Kane's right to demand an immediate liquidation and distribution by yielding to the IRS' directive to remit the proceeds of the IRA. Under § 6332(e), CGTC cannot be held liable for complying with the IRS' lawful demand to which it had no valid defense. Therefore, CGTC is entitled to summary judgment against Kane. It is unnecessary to consider the remaining arguments of the parties.

IT IS SO ORDERED.