**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 15 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

GERALD E. KANE,

      Plaintiff-Appellant,

v.

CAPITAL GUARDIAN TRUST
COMPANY,

      Defendant-Appellee.

No. 97-3030

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 94-1528-MLB)
(953 F. Supp. 1200)

John C. King of King Law Offices (John L. Brennan with him on the brief), Wichita,
Kansas, for Plaintiff-Appellant.

Eric B. Metz of Triplett, Woolf & Garretson, LLC (Jeffrey C. Dahlgren with him on the
brief), Wichita, Kansas, for Defendant-Appellee.

Before ANDERSON, BALDOCK, and MURPHY, Circuit Judges.

BALDOCK, Circuit Judge.

      The issue in this case is whether a trust company becomes liable to the holder of an

individual retirement account when the company responds to a federal tax levy against the

account by liquidating the mutual fund shares in the account and remitting the cash proceeds to the Government. On the facts of this case, we hold that the trust company is not liable to the account holder.

## I.

At the end of 1975, Plaintiff Gerald E. Kane (hereinafter "Kane"), then 51 years old, established an individual retirement account (hereinafter "IRA") under a trust agreement with Defendant Capital Guardian Trust Company (hereinafter "Capital Guardian"). Under the terms of the trust agreement, Kane had the right to withdraw funds from his IRA, but had no right to demand the issuance of share certificates representing his IRA's underlying investments. Rather, Capital Guardian retained sole discretion whether to issue share certificates for such investments.

In September 1993, Kane's IRA consisted of unissued shares in two open-end mutual funds--5,290.870 shares of the Investment Company of America and 286.202 shares of the Growth Fund of America--valued at more than $107,000. Shares in an open-end mutual fund are "redeemable securities" which means that the account holder upon presentation to the issuer "is entitled . . . to receive approximately his proportionate share of the issuer's current net assets, or the cash equivalent thereof." 15 U.S.C. § 80a-2(a)(32). Therefore, while Kane's interest in the mutual funds represented a proportionate share of the two companies' current assets, he had no right to any actual share certificates.

Kane admits that due to financial difficulties, he failed to pay his 1989 federal income tax liability of more than $100,000. On August 5, 1993, the Internal Revenue Service (hereinafter "IRS") issued a Notice of Levy to Capital Guardian under 26 U.S.C. § 6331, specifically attaching the funds in Kane's IRA. Consistent with the IRS' instructions "to turn over to us this person's [Kane's] property and rights to property (such as money, credits and bank deposits) . . . which you are already obligated to pay this person," Capital Guardian responded to the levy by liquidating Kane's IRA, and remitting the cash proceeds of $107,706.25 to the IRS. Capital Guardian then submitted the appropriate 1993 IRS Form 1099-R, reporting a gross distribution from Kane's IRA in the same amount. Capital Guardian's cash distribution from Kane's IRA resulted in an additional tax liability to Kane in 1993 of $41,418.

Eleven months after Capital Guardian liquidated his IRA, Kane responded by filing suit in Kansas state court against Capital Guardian for conversion and breach of fiduciary duty. Kane alleged that Capital Guardian had no authority to liquidate the mutual fund shares in his IRA and remit the cash proceeds to the IRS. Kane did not dispute the validity of the levy. He acknowledged that his interest in the IRA was a property interest to which a federal tax lien could attach and upon which the Government could levy. Instead, Kane claimed that Capital Guardian should have responded to the levy by issuing share certificates in the mutual funds to the IRS, and its failure to do so deprived him of his right to redeem the shares prior to a tax sale. See 26 U.S.C. § 6337.

3

Consequently, Kane demanded that Capital Guardian (1) restore his IRA to its pre-levy status, and (2) pay both his 1989 and 1993 federal tax liabilities.

Capital Guardian removed the suit to federal district court on the bases of federal question and diversity jurisdiction.[1] On cross motions for summary judgment, see Fed. R Civ. P. 56, pursuant to stipulated facts, the district court ruled that Capital Guardian could not "be held liable for complying with the IRS' lawful demand to which it had no valid defense." Kane v. Capital Guardian Trust Co., 953 F. Supp. 1200, 1208 (D. Kan. 1997). Accordingly, the district court entered judgment for Capital Guardian, and Kane appealed. Our jurisdiction arises under 28 U.S.C. § 1291. We review a grant of summary judgment de novo employing the same legal principles as the district court. See Lytle v. City of Haysville, 138 F.3d 857, 862 (10th Cir. 1998). Applying this standard, we affirm.

## II.

Federal law places a tax lien in favor of the Government upon "all property and

---

[1] Because the parties are diverse and the amount in controversy is sufficient, the district court undoubtedly had subject matter jurisdiction over Kane's complaint pursuant to 28 U.S.C. § 1332. Accordingly, although Kane's complaint does not allege a federal cause of action, we need not inquire whether the well-pleaded complaint rule provides us with federal question jurisdiction under 28 U.S.C. § 1331. See Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 13 (1983) ("Even though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States, if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties.").

rights to property, whether real or personal, tangible or intangible" of a taxpayer who fails to pay taxes due and owing after assessment and demand. 26 C.F.R. § 301.6321-1; accord 26 U.S.C. §§ 6321-22. The reach of a federal tax lien is broad. Congress intended the lien "to reach every interest in property that a taxpayer may have." United States v. National Bank of Commerce, 472 U.S. 713, 719-20 (1985). A federal tax lien may reach a taxpayer's interest in "property or rights to property" to the extent that applicable state law recognizes the subject interest as property. Id. at 722. Federal law, however, defines the tax consequences which attach to a state-created property interest. Id.

Because a federal tax lien is not self-executing, the IRS must take affirmative measures to collect the delinquent taxes. Id. at 20. Federal law provides a provisional remedy to the IRS for the collection of delinquent taxes which requires no judicial intervention. See 26 U.S.C. §§ 6331-43. This remedy is known as an administrative levy, and is justified by "the need of the government promptly to secure its revenues." Nat'l Bank of Commerce, 472 U.S. at 720-21. Unlike the lien-foreclosure suit authorized by 26 U.S.C. § 7403, an administrative levy does not determine priority disputes between the Government and other claimants, but instead protects the Government against diversion or loss while such disputes, if any, are resolved. See Nat'l Bank of Commerce, 472 U.S. at 721.

Ten days after notice and demand to the taxpayer, the IRS may levy "upon all property and rights to property (except such property as is exempt under section 6334)

5

belonging to such person or on which there is a lien . . . for the payment of such tax."

26 U.S.C. § 6331(a). The IRS begins the levy process "by serving a notice of levy on any

person in possession of, or obligated with respect to, property or rights to property subject

to levy." 26 C.F.R. § 301.6331-1(a)(1). The IRS effectuates a levy upon tangible

property through (1) notice of levy, and (2) seizing, posting, or tagging the property. See

G.M. Leasing Corp. v. United States, 429 U.S. 338, 350 (1977). The IRS effectuates a

levy upon intangible property, that is to say property which is not subject to physical

seizure, posting, or tagging, such as mutual fund shares, see Baum v. Investors

Diversified Serv., Inc., 409 F.2d 872, 875 (7th Cir. 1969) (redemption right in mutual

fund shares constitutes intangible property interest), by the sole act of serving notice of

levy upon the third party holding the property. See G.M. Leasing Corp., 429 U.S. at 350.

Upon service of the notice of levy, the IRS "steps into the shoes of the taxpayer and

acquires 'whatever' rights to the property the taxpayer possessed." United States v. Bell

Credit Union, 860 F.2d 365, 369 (10th Cir. 1988).

Under 26 U.S.C. § 6332(a), only two defenses to a levy will excuse a third party's

noncompliance. That section provides:

> [A]ny person in possession of (or obligated with respect to) property or
> rights to property subject to levy upon which levy has been made shall,
> upon demand . . . surrender such property or rights (or discharge such
> obligation) . . . except such part of the property or rights, as is, at the time of
> such demand, subject to attachment or execution under any judicial process.

Id. Thus, to avoid liability to the Government for failure to comply with a notice of levy,

6

a third party must establish that (1) it is not in possession of the taxpayer's "property or rights to property," or (2) the taxpayer's "property or rights to property" was subject to prior judicial attachment or execution. Id.; accord Nat'l Bank of Commerce, 472 U.S. at 721-22. In the absence of either defense, a party failing to honor a federal tax levy is liable for a sum equal to the value of the property plus interest and costs. 26 U.S.C. § 6332(c)(1). If the failure to surrender the property is without reasonable cause, the third party may incur a 50% penalty as well. Id. § 6332(c)(2).

III.

The district court concluded that because neither of the foregoing defenses were available to Capital Guardian, it had no choice but to honor the levy against Kane's IRA. To support its judgment in favor of Capital Guardian, the district court relied principally upon 26 U.S.C. § 6332(e), concerning the effect of honoring a federal tax levy. Kane, 953 F. Supp. at 1206-08. That section provides:

> Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary . . . shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

18 U.S.C. § 6332(e); accord 26 C.F.R. § 301.6332-1(c).

Despite § 6332(e)'s broad language, Kane contends that § 6332(e) provides Capital Guardian with neither a defense nor immunity to his claims. See Smith v.

7

Kitchen, No. 97-1237, 1997 WL 768297 at *3 (10th Cir., 1997) (unpublished)

(recognizing disagreement between the circuits as to whether § 6332(e) creates a defense

or immunity). Kane reasons that § 6332(e) does not apply in this case because Capital

Guardian did not surrender his "property or rights to property" when it liquidated his IRA,

but instead changed the fundamental character of his property and transferred a

nonredeemable asset, namely cash, to the IRS. Kane complains that Capital Guardian

effectively circumvented his statutory right under 26 U.S.C. § 6337(a) to redeem the

mutual fund shares in his IRA prior to their sale. Section 6337(a) provides:

> Any person whose property has been levied upon shall have the right to pay the amount due, together with the expenses of the proceeding, if any, to the Secretary at any time prior to the sale thereof, and upon such payment the Secretary shall restore such property to him, and all further proceedings in connection with the levy on such property shall cease from the time of such payment.

Id. While Kane's argument is novel, we are not persuaded.

A.

By using the phrase "property and rights to property" in 26 U.S.C. § 6331,

Congress intended to reach "every interest in property that a taxpayer might have." Nat'l

Bank of Commerce, 472 U.S. at 719-20 (emphasis added). To that end, courts have

interpreted the phrase broadly. For example, in United States v. Bess, 357 U.S. 51, 56

(1958), superseded by 26 U.S.C. § 6332(b) (expressly permitting the Government to levy

against an insurance company for the cash surrender value of life insurance policies and

endowment contracts), the Supreme Court held that the cash surrender value of a

taxpayer's life insurance policy constituted "property or rights to property" to which a federal tax lien could attach. In Nat'l Bank of Commerce, 472 U.S. at 724 n.8, the Court concluded that "as a matter of federal law, the state-law right to withdraw money from a joint bank account is a 'right to property' adequate to justify the use of the provisional levy procedure of § 6331." In Bell Credit Union, 860 F.2d at 367-68, we held that the taxpayers' capital share accounts in a credit union were a "right to property" subject to federal tax levies, where "the taxpayers had an unrestricted right to withdraw the funds from the share accounts at the time of the levies." In United States v. Metropolitan Life Ins., 874 F.2d 1497 (11th Cir. 1989), the Eleventh Circuit held that the unelected cash withdrawal value of a delinquent taxpayer's annuity contract was a "right to property" subject to levy. The court stated:

> [U]nder state law the taxpayer had the right to withdraw the full value of the annuity. The issue is whether the right is sufficient to obligate the insurance company under section 6332(a) to surrender the funds subject to the withdrawal right to the IRS upon receipt of the notice of levy. We hold that it is.

Id. at 1500. See also United States v. Central Bank of Denver, 843 F.2d 1300, 1305 (10th Cir. 1988) (depositor's claim against bank for deposited funds constituted a "right to property" subject to federal tax levy); United States v. Ruff, 99 F.3d 1559, 1566 (11th Cir. 1996) (broker's earned but unpaid commission constituted a "right to property" subject to federal tax levy).

Kane's right to liquidate his IRA and withdraw the funds therefrom (even if

9

subject to some interest penalty) undoubtedly constituted a "right to property" subject to the IRS' administrative levy power under 26 U.S.C. § 6331(a). Upon Capital Guardian's receipt of the notice of levy, the IRS stepped into Kane's shoes and acquired all his rights in the IRA, including his right to liquidate the mutual fund shares in his IRA and withdraw the cash proceeds. See Bell Credit Union, 860 F.2d at 369; 15 U.S.C. § 80a-2(a)(32). In the notice of levy, the IRS exercised Kane's right to receive the cash value of his mutual fund shares when it directed Capital Guardian to liquidate the IRA and send it the cash proceeds. Plainly, Capital Guardian surrendered a "right to property" belonging to Kane when it complied with the levy.

As the district court properly recognized, Kane incorrectly interprets the phrase "property and rights to property" as used in § 6331(a) to mean only his IRA's mutual fund shares. This interpretation effectively reads out of the statute "rights to property" such as Kane's right to withdraw funds from his IRA, i.e. his right to receive the cash value of his IRA's mutual fund shares. Kane's interpretation of § 6331(a) would limit an IRS levy to "property" actually in the possession of the third party served with a notice of levy. Kane's interpretation is also inconsistent with § 6332(a) in that it would eliminate "obligations" from property subject to levy. Furthermore, it would render superfluous 26 C.F.R. § 301.6331-1(a)(1)'s statement that obligations may be levied upon if they are "fixed and determinable," although the right to receive payment is deferred. See Ruff, 99 F.3d at 1567.

10

Perhaps Capital Guardian could have done as Kane suggests and issued mutual fund shares to the IRS (which the IRS simply would have presented to Capital Guardian for cash), in order to comply with the levy. Even so, Kane's right to withdraw funds from his IRA still constituted a "right to property" upon which the IRS could and did levy. Because under the terms of the trust agreement with Capital Guardian, Kane had no right to demand certification and issuance of the mutual fund shares in his IRA, neither did the IRS.

We reject Kane's argument that Capital Guardian unlawfully circumvented his right to redeem his mutual fund shares under 26 U.S.C. § 6337. Section 6337 refers to the taxpayer's right to redeem "property" "at any time prior to the sale thereof." Notably missing from § 6337(a) is the phrase "right to property." As we have explained, Kane's intangible "right to property" upon which the IRS levied was his right to convert the IRA to cash. Once Capital Guardian converted the IRA to cash in compliance with the levy, the IRS had nothing to sell, and Kane had nothing to redeem.

In Nat'l Bank of Commerce, 472 U.S. at 725-26, the Supreme Court explained that where a taxpayer has the right to withdraw funds from his account, "it is inconceivable that Congress intended to prohibit the Government from levying on that which is plainly accessible to the delinquent taxpayer-depositor." (internal ellipses and quotations omitted). Nat'l Bank of Commerce makes clear that funds in possession of a third party subject to the taxpayer's withdrawal constitute a right to property in the custody of the

11

third party.  See Metropolitan Life Ins., 874 F.2d at 1501.  In this case, the funds in Kane's IRA were "plainly accessible" to him; thus, those funds were also "plainly accessible" to the IRS upon notice of levy to Capital Guardian.

In any event, any complaint Kane has regarding the denial of his right of redemption under 26 U.S.C. § 6337(a), lies against the IRS, not Capital Guardian.  Where the IRS seizes a delinquent taxpayer's property from a third party via administrative levy, nothing in the Internal Revenue Code requires the third party to ensure the taxpayer's right of redemption.  Rather that burden rests with the IRS.  See 26 U.S.C. § 6335(a), (b) (requiring the IRS to notify the taxpayer of seizure and sale).  If Kane believes the IRS wrongfully deprived him of the right to redeem his property, he should petition the IRS under 26 U.S.C. § 6343(b) for return of the property.  See id. § 6343(b) ("If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return . . . the specific property levied upon . . . .").

B.

With all this in mind, we now turn to the fate of Kane's state law claims for conversion and breach of fiduciary duty against Capital Guardian.  Like the district court, we conclude that 26 U.S.C. § 6332(e) provides Capital Guardian with a "complete defense" to Kane's state law claims.  Kitchen, 1997 WL 768297 at *3. No question exists in this case that (1) Kane's right to convert his IRA to cash was a "right to property subject to levy;" (2) the IRS acquired this "right to property" when it served notice of levy

12

on Capital Guardian," and (3) upon demand of the IRS, Capital Guardian surrendered that "right to property," liquidated Kane's IRA, and submitted the cash proceeds to the IRS. By its plain language then, § 6332(e) shields Capital Guardian from liability to Kane. See Moore v. General Motors Pension Plans, 91 F.3d 848, 851 (7th Cir. 1996); see also S. Rep. No. 89-1708 (1966), reprinted in 1966 U.S.C.C.A.N. 3722, 3740 ("[T]he effect of honoring the levy is the same as honoring a demand of the taxpayer."). Accordingly, Capital Guardian is "discharged from any obligation or liability to the delinquent taxpayer," namely Kane, for complying with the federal tax levy. See also Schulze v. Legg Mason Wood Walker, Inc., 865 F. Supp. 277, 285 (W.D. Pa. 1994) (§ 6332(e) provided "immunity" to investment banking firm that sold assets in taxpayer's stock account and sent proceeds to the IRS); United States v. Augspurger, 477 F. Supp. 94, 96-97 (W.D.N.Y. 1979) (predecessor to § 6332(e) would protect investment firm that redeemed taxpayer's mutual fund shares and transferred cash to the IRS).

AFFIRMED.