**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 24 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff,

BONNEVILLE DISTRIBUTING, INC., a Utah corporation,

    Plaintiff-Counterdefendant - Appellant

v.

TRIANGLE OIL,

    Defendant,

    and

GREEN RIVER DEVELOPMENT ASSOCIATES, INC., a Utah corporation; WILLIAM S. GREAVES, an individual; STANLEY DEWAAL, an individual,

    Defendant-Counterclaimant - Appellee,

v.

UNITED STATES DEPARTMENT OF TREASURY; INTERNAL REVENUE SERVICE,

    Counterclaim Defendant.

No. 01-4033

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 97-CV-71-S)**

Stephen B. Mitchell (and Richard D. Burbridge, with him on the briefs), Burbridge & Mitchell, Salt Lake City, Utah, for Plaintiff - Appellant.

George A. Hunt (and Kurt M. Frankenburg, with him on the brief), Williams & Hunt, Salt Lake City, Utah, for Defendants - Appellees.

Before **KELLY**, **BRORBY**, and **MURPHY**, Circuit Judges.

**KELLY**, Circuit Judge

Plaintiff-Appellant Bonneville Distributing, Inc. ("Bonneville") appeals the district court's grant of summary judgment to Defendants-Appellees Green River Development Associates, Inc., William S. Greaves, and Stanley DeWaal (collectively, "Green River"). We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse and remand for further proceedings.

Background

This action involves a joint venture between Bonneville and Green River under which the joint venturers operated a truck stop in Green River, Utah. The joint venture began in 1983 with Triangle Oil, Inc. ("Triangle") and Green River

- 2 -

as the original joint venturers. Pursuant to the joint venture agreement, Triangle was entitled to receive one-half cent per gallon of motor fuel sold and was also to receive common carrier rates for fuel delivered to the truck stop. In 1990, with Green River's approval, Triangle assigned its interest to Bonneville. At the time of the assignment, Triangle's property was subject to federal tax liens.

In April, 1993, Bonneville commenced a state court action against Green River seeking recovery of an account receivable allegedly owed to Bonneville and for payment for fuel sold and delivered. In August of 1993, the Internal Revenue Service ("IRS") served a Notice of Levy to Green River upon all of Triangle's property and rights to property. After several inquiries, the IRS notified Green River that the Notice of Levy applied to Bonneville's interest in the joint venture and that any payments to Bonneville should go to the IRS. In 1995, Green River notified Bonneville that it was dissolving the joint venture effective December 11, 1995. According to Green River, it was dissolving the joint venture pursuant to a clause in the agreement providing for termination upon the end of the underlying truck stop lease. The IRS reviewed Green River's dissolution plan and agreed to accept payments of Bonneville's liquidated interest.

Bonneville then brought an additional claim of wrongful dissolution that was eventually consolidated with the original action. Due to the levies, Green River filed a counterclaim naming the United States as an additional defendant

and sought declaratory relief with respect to whether the United States or Bonneville was entitled to receive payments related to Bonneville's joint venture interest. The United States removed the case to federal court. The district court granted the United States' unopposed motion for summary judgment, thus reducing the tax liens against Triangle to judgment and concluding that Bonneville's joint venture interest was subject to the tax lien. The district court also granted summary judgment to Green River after concluding that 26 U.S.C. § 6332(e), which provides immunity to third parties who comply with IRS levies, prevented Bonneville from bringing its state law claims against Green River.

On appeal of that decision, a panel of this Court affirmed the district court "on all issues relating to Green River's honoring of the federal tax levies . . . against Bonneville's interest in the joint venture." United States v. Triangle Oil Co., No. 98-4147, slip op. at 10 (10th Cir. Jun. 12, 2000) (Aplt. App. at 517). The panel reversed the district court, however, "insofar as it dismissed with prejudice all of Bonneville's state law claims against Green River," and stated further that "[o]n this record, we are not persuaded that all of Bonneville's state law claims are necessarily subsumed in Green River's section 6332(e) defense." Id.

On remand, the district court again granted summary judgment to Green River. The district court began by quoting the panel in the prior appeal where it

stated: "Once the levy was served, the IRS effectively stood in the shoes of Bonneville and acquired constructive possession of whatever rights Bonneville had in joint venture assets in the possession of Green River." See id. at 8–9 (Aplt. App. at 515–16). The district court reasoned that the joint venture assets included Bonneville's state law claims. Thus, according to the district court, the IRS's actions in this case deprived Bonneville of any ownership interest in the joint venture and therefore deprived Bonneville of the ability to bring such claims. In effect, the district court concluded, Bonneville had no standing to bring its state law claims. On appeal, Bonneville contends that it has standing to assert its state law claims because it still owns the joint venture interest.

## Standard of Review

We review the grant of summary judgment de novo, applying the same legal standard used by the district court. L&M Enter., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000) (citation omitted). Summary judgment is appropriate if "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing a summary judgment motion, the court views the record "in the light most favorable to the nonmoving party." Thournir v. Meyer, 909 F.2d 408, 409 (10th Cir.1990) (citation omitted).

## Discussion

The district court's conclusion that Bonneville had no standing to bring claims related to its joint venture interest necessarily involved an interpretation of the effect of the IRS's levy power against that interest. Although there is no question that the IRS properly exercised its levy power in this case, we find it necessary to review the relevant statutory provisions to determine the effect its actions had on Bonneville's joint venture interest. To satisfy a tax deficiency, the IRS may impose a lien on any "property" or "rights to property" belonging to a taxpayer. 26 U.S.C. § 6321. To complement this provision, § 6331(a) allows "the Secretary to collect such tax . . . by levy upon all property and rights to property . . . on which there is a lien . . . ." Id. § 6331(a). "The term 'levy' as used in this title includes the power of distraint and seizure by any means." Id. § 6331(b). This administrative levy power is justified by "the need of the government promptly to secure its revenues." United States v. Nat'l Bank of Commerce, 472 U.S. 713, 721 (1985) (internal quotation omitted). Unlike a lien-foreclosure suit authorized by 26 U.S.C. § 7403, however, an administrative levy does not determine priority disputes between the Government and other claimants, but instead protects the Government against diversion or loss while such disputes, if any, are resolved. See id. at 721. Further, an administrative levy does not "transfer ownership of the property to the IRS." United States v.

- 6 -

Whiting Pools, Inc., 462 U.S. 198, 209–10 (1983).

"We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property.'" Drye v. United States, 528 U.S. 49, 58 (1999). Pursuant to Utah law, joint ventures are treated under the same statutory provisions as are partnerships. See Utah Code Ann. § 48-1-3.1 (1998). Utah law recognizes the following property rights of a partner: (1) the rights in specific partnership property held as a tenant in partnership; (2) the interest in the partnership; and (3) the right to participate in management. Id. § 48-1-21. Here, the levy was against Bonneville's "property and rights to property." See 26 U.S.C. § 6321. According to Utah law, "[a joint venturer's] interest in the [joint venture] is his share of the profits and surplus, and the same is personal property." Utah Code Ann. § 48-1-23. Federal courts, including this circuit, have long defined a partner's interest in the partnership in a similar manner. See United States v. Kaufman, 267 U.S. 408, 414 (1925) (lien against a partner owing an individual tax "extends only to his interest in the surplus of the partnership property"); Adler v. Nicholas, 166 F.2d 674, 678–79 (10th Cir. 1948); see also United States v. Worley, 213 F.2d 509, 512 (6th Cir. 1954) (citing Kaufman); Economy Plumbing & Heating Co. v. United States, 456 F.2d 713, 716 (Cl. Ct. 1972) (citing Kaufman). The IRS has

itself recognized that a partner's interest in a partnership is generally limited to the "right to a proportionate share of the distribution of partnership profits or surplus after the payment of partnership debts." Internal Revenue Man. § 5.17.3.5.16 (2001); see also Rev. Rul. 73-24, 1973-1 C.B. 602 (IRS could not seize partnership-owned bank account to satisfy tax deficiency of individual partner).

Given the property and rights to property pertaining to Bonneville's interest in the joint venture, it is clear that the IRS properly accepted the proceeds from the dissolution of the joint venture. Those proceeds represented Bonneville's share of the surplus of joint venture assets over the joint venture's liabilities and the levy attached to that surplus. Kaufman, 267 U.S. at 414.

Requiring closer scrutiny, however, is the question as to whether the acceptance of the plan of dissolution and the subsequent payment of the proceeds to the IRS divested Bonneville of those state-law property rights other than its economic interest in the joint venture. Even if the IRS had foreclosed on Bonneville's interest in the joint venture, which it did not do, under Utah law Bonneville would still remain a partner and would still be able to exercise management rights and proportionate control over specific partnership property. See Utah Code Ann. §§ 48-1-24, 48-1-25 (partner retains management rights). As such, the fiduciary duty that Green River owed to Bonneville still remained even

subsequent to the dissolution of the joint venture.  See Utah Code Ann. § 48-1-18 (fiduciary duty of partner to other partners applies to formation, conduct, or liquidation of the partnership).  We cannot say that Bonneville's state law claims related to its status as a partner, as opposed to its status as owner of an interest in the partnership, were obliterated with the IRS's collection of the proceeds resulting from the dissolution.

Even were we to assume that Bonneville's state law claims attached only to its interest in the joint venture, the district court's conclusion that Bonneville lacked standing because the IRS divested Bonneville of all interest in the joint venture still could not stand.  Although the IRS levy power does provide the IRS with abilities "to enforce its tax liens that are greater than those possessed by private secured creditors," it still does not "transfer ownership of the property to the IRS."  Whiting Pools, 462 U.S. at 209–10.  Thus, while the levy power does provide the IRS with rights to property co-extensive with those of the taxpayer, see Nat'l Bank of Commerce, 472 U.S. at 725 ("The IRS acquires whatever rights the taxpayer himself possesses."); Kane v. Capital Guardian Trust Co., 145 F.3d 1218, 1221 (10th Cir. 1998) (stating that the "IRS steps into the shoes of the taxpayer and acquires whatever rights to the property the taxpayer possessed") (internal quotation omitted), absent a foreclosure or similar action the taxpayer still retains ownership of the property.  See United States v. Challenge Air Int'l,

Inc. (In re Challenge Air Int'l, Inc.), 952 F.2d 384, 387 (11th Cir. 1992) (stating that an administrative levy does not "transfer ownership of the property" and holding that the IRS's constructive possession of the right to payment did not obliterate all rights of the debtor). Given that Bonneville still retained ownership of whatever remained of its interest in the joint venture, we fail to see why it should be prevented from exercising the rights attached to that property, *e.g.*, a right to an accounting, simply because the IRS has chosen not to exercise any of those related rights.

Green River advances a number of arguments to persuade us that Bonneville has lost its right to bring its state law claims. To begin, Green River relies on the "law of the case" doctrine to establish that: (1) the IRS levy attached to Bonneville's interest in the joint venture and the IRS "stood in the shoes of Bonneville and acquired constructive possession of whatever rights Bonneville had," and (2) the United States succeeded to Bonneville's right to consent to the dissolution of the joint venture and the valuation of its interest. Aplee. Br. at 8. While we agree that the panel decision in the prior appeal established these points, nothing in our present opinion contradicts those two conclusions. We have already recognized that the IRS had every right to agree to the dissolution plan, but have simply not gone so far as to say that the IRS, by accepting the proceeds of the dissolution, wiped out every property right or cause of action

Bonneville had in relation to its joint venture participation. Neither case that Green River cites supports its position that the IRS administrative levy subsumed all of Bonneville's joint venture property rights. In United States v. Spurgeon, 861 F.2d 181 (8th Cir. 1988), the taxpayers transferred their farm to a trust, but the IRS discovered the asset, filed a Notice of Levy, and eventually purchased the farm in a closed-bid sale. Id. at 182. When the taxpayers attempted to challenge the Government's ejectment action, the district court concluded that they had no standing to do so. On appeal, the Eighth Circuit affirmed, holding that the "levy proceedings divested [the taxpayer] of all ownership interests he may have held in the farm." Id. at 183. We are not faced with the same situation as in Spurgeon, however, because in this case the IRS never undertook the statutory actions required to transfer ownership of the joint venture interest. See 26 U.S.C. § 6335 (detailing actions necessary for IRS sale of levied property). Green River's other case, Shire Dev. v. Frontier Inv., 799 P.2d 221 (Utah Ct. App. 1990), is also unavailing. In that case, the court simply held that the plaintiffs could not sue on a contract to which they were not a party. See id. at 222–23. Here, there is no question that Bonneville, by virtue of its written assignment from Triangle, was a party to the joint venture agreement.

Green River also relies on an IRS district counsel's internal memorandum for support of its assertion that Bonneville lacks standing. In that memorandum,

the district counsel stated,

> In effect, the Service levied upon the chose in action. Based upon [Spurgeon and other cases], it appears that Bonneville has no standing in its lawsuit, since it is in the lawsuit only as a successor or transferee of Triangle Oil and the Service seized "all the right, title, and interest of Triangle Oil" in the funds that are the subject of the lawsuit.

Aplt. App. at 521. In addition to Spurgeon, which we have already distinguished, the district counsel also relied on United States v. Geissler, 1993 WL 625535 (D. Idaho Nov. 8, 1993), where the court held that the taxpayers had no interest in the real property at issue because an administrative levy and sale had occurred. Id. at *5. Geissler, like Spurgeon, is therefore of limited relevance because in this case no sale has occurred. Thus, whatever its value as persuasive authority, the internal memorandum was premised on an assumption with which we disagree, namely, that the administrative levy operates as a transfer of "all right, title, and interest" in the subject property. This contradicts the Supreme Court's statement in Whiting Pools, 462 U.S. at 209–10, that an administrative levy does not transfer ownership of the subject property and is also contrary to decisions in other circuits. See, e.g., Challenge Air Int'l, 952 F.2d at 387; United States v. Sullivan, 333 F.2d 100, 116 (3d Cir. 1964) (stating that implicit in the administrative levy power is the "principle that the Commissioner acts pursuant to the collection process in the capacity of lienor as distinguished from owner").

Green River also relies on the Kane case to support the district court's

decision that Bonneville lacked standing to bring its state law claims. In Kane, the IRS sent a notice of levy to a trust company that was the custodian of the mutual fund shares in the taxpayer's Individual Retirement Account ("IRA"). 145 F.3d at 1220. Upon receipt of the notice, the trust company liquidated the mutual fund shares and transferred the proceeds to the IRS. Id. The taxpayer sued the trust company, claiming that it had transformed the nature of his mutual fund shares into cash and thereby prevented him from exercising his right to redeem the shares. Id. at 1222. As Green River states, the "core issue" in Kane "was whether, after it had levied upon [the] mutual fund . . ., the IRS was entitled to exercise Mr. Kane's rights [to] liquidate the fund and take delivery of the monetary proceeds from the liquidation." Aplee. Br. at 11. The court held that the IRS was indeed entitled to liquidate the fund and therefore concluded that the trust company could not be sued for complying with the levy. Kane, 145 F.3d at 1224.

Nothing in our opinion is inconsistent with the Kane decision. Like the court in Kane, we have recognized that the IRS "stepped into the taxpayer's shoes" and exercised the same right the taxpayer had available, *viz.*, the right to receive the proceeds upon dissolution. See Kane, 145 F.3d at 1221. Despite Green River's assertion to the contrary, however, Kane is distinguishable and does not compel us to find that the IRS's acceptance of the dissolution proceeds

- 13 -

subsumed all of Bonneville's state law claims. First, the court in <u>Kane</u> was not addressing the issue we have before us: whether a party in control of a taxpayer's levied property can be held to answer for claims of fraud, breach of contract, or breach of fiduciary duty that occurred prior to surrender of the property (or rights thereto) to the IRS. Second, a joint venture interest is a fundamentally different asset than mutual fund shares residing in an IRA. As discussed <u>supra</u>, a joint venturer's property rights in a joint venture are comprised of more than a mere financial interest, but include management rights and rights in specific property. Although the <u>Kane</u> court did state that "[o]nce Capital Guardian converted the IRA to cash . . . the IRS had nothing to sell, and Kane had nothing to redeem," <u>Kane</u>, 145 F.3d at 1223, we do not read that statement as suggesting that ownership was transferred. The statement merely reflects the practical result that, due to the nature of the levied property involved in that case, the liquidation of the IRA left Kane without any property.

Green River has suggested in its brief as well as in oral argument that Bonneville's only avenue for relief in this case is a wrongful levy action pursuant to 26 U.S.C. § 7426. That section allows a party claiming an interest in property that has allegedly been "wrongfully levied upon" to bring a civil action against the United States for relief. 26 U.S.C. § 7426. In this appeal, however, Bonneville does not challenge any aspect of the IRS's actions in connection with

the levy. Instead, Bonneville claims that Green River used the IRS levy as an opportunity to violate the joint venture agreement and avoid liability for any wrongful actions in doing so. Having reviewed the evidence in the light most favorable to Bonneville, as we must, we cannot say that the record reveals anything more than that the IRS simply reviewed Green River's proposed dissolution plan and agreed to accept the liquidation proceeds. See Aplt. App. at 220 (declaration of IRS attorney); id. at 446 (deposition of IRS agent); id. at 54, ¶ 21 (Green River's answer to Bonneville's state court complaint). Given that the IRS did not force Green River to implement a dissolution plan, Bonneville simply had no reason to pursue a wrongful levy action. True, the IRS did review Green River's plan of dissolution, but that was a right that the IRS had by virtue of the levy and its exercise of that right was therefore not wrongful. See Kane, 145 F.3d at 1223.

Finally, Green River asserts that Bonneville's state law claims should be dismissed because of the protection afforded by 26 U.S.C. § 6332(e). That section provides that an individual who, "upon demand by the Secretary, surrenders . . . property or rights to property . . .shall be discharged from any obligation or liability to the delinquent taxpayer . . . with respect to such property or rights to property arising from such surrender or payment." 26 U.S.C. § 6332(e). Although the IRS has interpreted the immunity under that section

broadly, see 26 C.F.R. § 301.6632-1(c)(2), the language of the statute limits the protection to a party's actions "arising from such surrender or payment." 26 U.S.C. § 6332(e). Thus, as the panel concluded in the prior appeal, Green River "is entitled to the protection of section 6332(e)," but only in relation to its "honoring of the federal tax levies." Triangle Oil, slip op. at 10 (Aplt. App. at 517). On these facts, we decline to extend the immunity afforded under § 6332(e) to the entire series of events that occurred prior to the actual surrender of the dissolution proceeds to the IRS.

Green River cites the "law of the case" doctrine to support its assertion that § 6332(e) immunity applies, but, in this case, we disagree that the doctrine prevents Bonneville from maintaining its state law claims. Courts use "law of the case" to "promote decisional finality" and rely on it to prevent relitigation of an issue already decided in prior proceedings of the same case. Octagon Res., Inc. v. Bonnett Res. Corp. (In re Meridian Reserve, Inc.), 87 F.3d 406, 409 (10th Cir. 1996). Although in the prior appeal the panel stated that Green River "is entitled to the protection of section 6332(e)," it nonetheless reversed because it was "not persuaded that all of Bonneville's state law claims are necessarily subsumed in Green River's section 6332(e) defense." Triangle Oil, slip op. at 10 (Aplt. App. at 517). Given the panel's ultimate disposition of the case in the prior appeal, we do not see our present decision as "abrogat[ing] the prior decision" and we

therefore decline to allow the law of the case doctrine to control our resolution of this appeal.  See In re Meridian, 87 F.3d at 409–410.

At oral argument, counsel for Bonneville conceded that the amount of money it anticipated from this litigation would never reach the current amount of the levy against the joint venture interest.  Further, although the IRS did not file a brief in this appeal, it has notified the clerk of this court by letter that any additional amounts that Bonneville recovers should be paid to the United States up to the full amount of the outstanding tax liability.  On this record, we express no opinion as to the legal ramifications of these particular circumstances, but leave it to the district court on remand to determine their effect.

Accordingly, we REVERSE the district court's order granting Green River's motion for summary judgment and REMAND to the district court for further proceedings.