T.C. Summary Opinion 2007-187


UNITED STATES TAX COURT


WAYNE SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16263-05S.              Filed November 1, 2007.


<u>Frank M. Schuler</u> and Tara Jensen, for petitioner.

<u>Vicki L. Miller</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This matter was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, all Rule references are to the Tax Court Rules of

Practice and Procedure, and all section references are to the Internal Revenue Code, as amended.

This matter is before us under Rule 121 on the parties' cross-motions for summary judgment.

Respondent issued a notice of determination concerning collection action(s) under section 6320 and/or 6330 sustaining a levy on petitioner's property to collect unpaid taxes for taxable years 2000, 2001, and 2002. The underlying issue for decision in this matter is whether respondent's Appeals Office abused its discretion by rejecting offers-in-compromise made on petitioner's behalf, thus sustaining respondent's proposed levy action against petitioner's Individual Retirement Account (IRA).

### Background

For purposes of addressing the parties' cross-motions for summary judgment, the record in this matter consists of the pleadings, the parties' cross-motions for summary judgment, and the relevant documents attached thereto. The underlying facts in this case are not in dispute.

In order to collect unpaid Federal income taxes and related additions to tax and interest for 2000, 2001, and 2002 respondent seeks to levy on petitioner's IRA for the taxes owed as follows: $1,636.51 for 2000; $27,368.92 for 2001; and $5,800.83 for 2002.

Filing of Federal Income Tax Returns

Petitioner delinquently filed his Federal income tax return for taxable year 2000 on October 22, 2002. On his 2000 return, he reported tax in the amount of $13,825, less withholding credits of $12,502. He did not remit the $1,323 owed when he filed his return. Petitioner later made three payments, totaling $557, towards the amount owed for 2000.

Petitioner delinquently filed his Federal income tax return for taxable year 2001 on January 28, 2003. On his 2001 return, he reported tax in the amount of $22,511, less withholding credits of $5,099. He did not remit the $17,412 owed when he filed his return.

Petitioner delinquently filed his 2002 Federal income tax return on May 1, 2003. On his 2002 return, he reported tax in the amount of $6,227, less withholding credits of $1,700. He did not remit the $4,672 owed when he filed his return.

Request for Collections Due Process Hearing

On August 7, 2004, respondent mailed to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing Under Section 6330/6331, which stated that respondent intended to levy on petitioner's IRA account in 30 days. In response, petitioner timely filed a request for a collection due process (CDP) hearing with respondent's Appeals Office. Petitioner's request for a hearing indicated his disagreement with

respondent's Notice of Intent to Levy on the grounds that the "collection by levy is inappropriate as [I] intend to submit an offer in compromise to resolve the tax liability soon."

Offer-In-Compromise

As contemplated in his request for a hearing, an offer-in-compromise (OIC) was submitted on petitioner's behalf by the Kansas City Tax Clinic on September 30, 2004.  Petitioner offered to pay a total of $9,407.60 in 24 monthly payments of $391.98, to compromise his outstanding total tax liabilities, including any interest, penalties, and additions to tax with respect to the taxable years at issue.

A document entitled "Explanation of Special Circumstances" (Explanation) was attached to petitioner's OIC.  In this Explanation, petitioner stated that when he was retired from AT&T in 1998 as the result of a corporate downsizing, his pension account with Bank of America had a value of approximately $400,000.  At some time after his separation from AT&T, petitioner bifurcated this pension account, placing about one-half of its total value into a new, separate retirement account, also with Bank of America.  The Explanation also stated that a combination of his taking several distributions from both of his Bank of America accounts, along with poor market factors, had resulted in a total depletion of one of the two Bank of America accounts.

The record reflects that at the time of his separation from AT&T, petitioner started receiving a series of substantially equal periodic payments, pursuant to section 72(t)(4), from one of the two Bank of America accounts in the form of a monthly distribution in the amount of $1,931.  Petitioner was still receiving this monthly amount at the time the present motions were heard by the Court.

Petitioner's financial statements, which are included as part of the record, contain the following information regarding petitioner's IRA accounts:

| Year | Amount Held in IRA (Form 5498) | Amount Issued to Petitioner (Form 1099-R) |
| --- | --- | --- |
| 1998 | $805,349 | $428,899 |
| 1999 | 538,390 | 83,373 |
| 2000 | 383,631 | 61,178 |
| 2001 | 222,290 | 80,077 |
| 2002 | 159,406 | 38,606 |
| 2003 | 145,155 | 23,177 |

With respect to the establishment and value of petitioner's bifurcated accounts, and the amounts withdrawn on each, the record contains only one bank statement from the Bank of America accounts, dated January 1-31, 2001.  This statement contains the following information:

| Account Number | Portfolio Detail | Total Value |
|---|---|---|
| * * * 1315 | Mutual funds | $289,802.65 |
| * * * 1323 | Cash/mutual funds | 86,848.52 |

The Kansas City Tax Clinic, in letters to respondent dated May 5, 2005, and May 10, 2005, explained that petitioner's withdrawals from the Bank of America accounts were due to his inability to work as a result of general downsizing in the telecommunications market, his considerable personal expenses, and his gambling addiction. The May 5, 2005, letter contained a Bank of America statement dated February 27 through March 28, 2001, showing that in the course of 1 month, petitioner withdrew nearly $4,000 from ATMs which the Kansas City Tax Clinic describes as either "at the Woodlands racetrack," or "the Argosy Casino."

Petitioner attached to his OIC Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, on which he listed the following as his monthly income and expenses:

| | |
|---|---|
| Pension/Social Security | [1]$1,931.50 |
| Food, clothing and misc. | (513.00) |
| Housing and utilities | (549.84) |
| Transportation | (280.00) |
| Health care | (183.24) |
| Taxes | (253.16) |
| Income after expenses | 152.26 |

[1]We note that petitioner did not receive Social Security payments, and will not be eligible to receive such payments until the year 2010. The $1,931.50 is solely the amount of the monthly distribution from the IRA.

During the taxable years in issue through the time that the present motions were heard, petitioner resided with his mother in her home.  The record contains a letter dated August 24, 2004, and signed "Linora Smith" which states: "Wayne Smith has paid $300 a month rent in cash for approximately the past three-and-one-half years."

With respect to the substantiation of the above expenses, the record contains voided photocopies of personal money orders drafted on an account held with Central Communications Credit Union dated January through March of 2005.  The "Pay to the Order of" line on each of these money orders has been filled in by hand, and neither the amounts reflected in these orders nor their payees correspond exactly to the expenses listed above.

Finally, and with respect to additional, "special" circumstances, the Explanation attached to the original OIC states that petitioner, at 56 years old, "is unable to find any worthwhile work", and that he previously underwent "two angioplasty procedures."

Collections Due Process Hearing

A CDP hearing occurred between petitioner's representative and the Internal Revenue Service (IRS) on May 11, 2005.  At that hearing, petitioner's representative restated the OIC in the amount of $9,407.60, and also proposed a second, alternative OIC, whereby the IRS could levy on petitioner's then-existing accounts to collect the full payment for the periods covered by the

hearing, provided that the IRS would both waive all penalties[1] associated with the account withdrawal, and compromise any liability stemming from petitioner's 2005 taxable year on the amounts withdrawn on the account for $1.00.  The Appeals Office rejected both the original OIC and the newly proposed OIC on the grounds that they were unacceptable and not viable collection alternatives.  The Appeals Office also stated that the proposed levy would not deplete petitioner's remaining IRA account, and that petitioner had neither alleged nor proven that he was disabled or unable to work.

On July 27, 2005, respondent mailed to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 in which respondent's Appeals Office sustained respondent's proposed levy action.

The petition alleges that respondent's Appeals Office abused its discretion in denying petitioner's OIC because it did not appreciate the effect that the recapture penalty under section 72(t)(4)(A) would have on petitioner as a result of a levy on petitioner's Bank of America account.  The petition also lists as grounds for relief that the proposed levy is more intrusive than necessary, and that petitioner has shown special hardship circumstances which demand a settlement of a lesser amount than that of the full assessment.

---

[1]Namely, the recapture penalty under sec. 72(t)(4)(A).

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine issue of any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of such party's pleading," but the objecting party's response "must set forth specific facts showing that there is a genuine issue for trial." Rule 121(d); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The petition was filed pursuant to section 6330(d), which provides for Tax Court review of the Commissioner's administrative determinations to proceed with the collection of tax liabilities via levies on property. Where the validity of the underlying tax liability is at issue, the Court will review that matter de novo. Davis v. Commissioner, 115 T.C. 35, 39 (2000). Where, as here, the underlying liability is not at issue, the Court will review the determinations made by

respondent's Appeals Office with respect to the proposed collections action under the abuse of discretion standard. Goza v. Commissioner, 114 T.C. 176 (2000). Under this standard, the Court shall consider whether the actions of the Appeals Office in rejecting petitioner's OIC and thus, sustaining respondent's proposed collections action, were arbitrary, capricious, or without sound basis in law. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner argues that respondent's Appeals Office abused its discretion in rejecting both proposed OICs because it did not consider that a levy upon petitioner's remaining IRA, a periodic payments account structured under section 72(t)(4), would trigger the recapture tax in such a manner that petitioner would be essentially left with little or no assets to live on until the time that he would be eligible to receive Social Security. Moreover, petitioner argues that respondent's Appeals Office ignored evidence that he was unable to work, and that his offers were reasonable in the light of his considerable and necessary monthly expenses.

Generally, amounts distributed from an IRA are includable in gross income as provided in section 72. Sec. 408(d)(1). Section 72(t)(1) further provides: "If any taxpayer receives any amount from a qualified retirement plan * * * the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of

the portion of such amount which is includable in gross income."

Section 72(t)(2) further provides:

Paragraph [72(t)(1) shall not apply to any of the following distributions:

> (A) * * * Distributions which are--
>
> > (iv) part of a series of substantially equal periodic payments * * * or
> >
> > *    *    *    *    *    *    *
> > (vii) made on account of a levy under section 6331 on the qualified retirement plan.

Section 72(t)(4) provides:

> (A) In general.  If--
> > (i) paragraph (1) does not apply to a distribution by reason of paragraph (2)(A)(iv), and
> > (ii) the series of payments under such paragraph are subsequently modified (other than by reason of death or disability)-
> >
> > > (I) before the close of the 5-year period beginning with the date of the first payment and after the employee attains age 59-1/2, or
> > > (II) before the employee attains age 59-1/2,
>
> the taxpayer's tax for the 1st taxable year in which such modification occurs shall be increased by an amount, determined under regulation, equal to the tax which (but for paragraph (2)(A)(iv)) would have been imposed, plus interest for the deferral period.

Petitioner's argument is premised on his belief that section 72(t)(4)(A), which applies the aforementioned recapture tax when a taxpayer modifies an existing series of substantially equal payments, supersedes the exception to the 10-percent additional tax provided in section 72(t)(2)(A)(vii), in cases where the

distribution from a qualified plan is made as a result of a levy action under section 6331. As we cannot point to authoritative case law, we accordingly begin our analysis with the relevant legislative history and intent behind the enactment of clause (vii) of section 72(t)(2)(A).

Section 72(t)(2)(A)(vii) was enacted as an amendment to section 72(t) as part of the IRS Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685. As reasoning for the addition of clause (vii), the Senate report states:

> the imposition of the 10-percent early withdrawal tax on amounts distributed from employer-sponsored retirement plans or IRAs on account of an IRS levy may impose significant hardships on taxpayers. Accordingly, the Committee believes such distributions should be exempt from the 10-percent early withdrawal tax. [S. Rept. 105-174, at 83 (1998), 1998-3 C.B. 537, 619.]

Notably, in further explanation of clause (vii), the Senate report emphasizes that the exception provided in clause (vii) shall only apply if "the plan or IRA is levied; it does not apply, for example, if the taxpayer withdrawals funds to pay taxes in the absence of a levy, [or] in order to release a levy on other interests." Id.

Therefore, the distinction that gives section 72(t)(2)(A)(vii) precedence over the recapture tax clause in section 72(t)(4)(A) is the concept of voluntariness; namely, that clause (vii) is intended to apply where the action that caused a distribution to be made did not originate with the taxpayer and/or did not occur at the discretion or direction of the

taxpayer.

This concept of voluntariness is also echoed in <u>Arnold v.</u>
<u>Commissioner</u>, 111 T.C. 250 (1998), concerning the recapture tax
provision under section 74(t)(4), and <u>United States v. Novak</u>, 476
F.3d 1041 (9th Cir. 2007), addressing section 72(t)(2)(A)(vii).
In <u>Arnold</u>, the taxpayer elected to receive a series of
substantially equal payments from an IRA pursuant to section
72(t)(4)(A) when he retired from his own company at age 55.  Four
years later, when he sold the business for less profit than he
anticipated, he received an additional distribution from his
account to compensate him for his loss of anticipated revenue.
This Court held that petitioner's receipt of an additional
distribution did not fall within one of the exceptions provided
in section 72(t)(2)(A) and was an impermissible modification to
the prior series of substantially equal periodic payments, thus
triggering the recapture tax under section 72(t)(4).  <u>Arnold v.</u>
<u>Commissioner</u>, <u>supra</u> at 255-256.

In <u>Novak</u>, the Court of Appeals for the Ninth Circuit
examined whether the IRS possessed the power to levy upon an
ERISA account to compensate the victims of the defendant's
crimes,[2] and where the defendant's right to access the account

---

[2] Notably, in <u>Murillo v. Commissioner</u>, T.C. Memo. 1998-13
(1998), affd. without published opinion 166 F.3d 1201 (2d Cir.
1998), the Court held that a taxpayer's forfeit of his retirement
plan as part of his criminal plea would also not trigger
application of the 10-percent additional tax under sec. 72(t)(1).

without incurring a penalty for Federal income tax purposes had not yet commenced. As to the latter consideration, the Court of Appeals held:

> under the "steps into the taxpayer's shoes" principle, see Nat'l Bank of Commerce, 472 U.S. 713, 725, a tax levy can demand (1) that a retirement plan directly pay to the IRS any post-retirement payments that otherwise would have automatically gone to the taxpayer; and (2) if the plan allows the participant to demand payment before retirement or at a different rate--including immediate payment of the entire present value of benefits--the full amount that the participant could presently demand. Retirement plan distributions to satisfy [such] a tax levy are not subject to the ten-percent penalty tax.
>
> Other circuits have held that the IRS has the authority to demand annuity and retirement funds when the beneficiary has the contractual right immediately to withdraw the money sought. See Kane v. Capital Guardian Trust Co., 145 F.3d 1218, 1223 (10th Cir. 1998) ("[Taxpayer's] right to liquidate his IRA and withdraw the funds therefrom (even if subject to some interest penalty) undoubtedly constituted a 'right to property' subject to the IRS' administrative levy power under [26 U.S.C. sec. 6331(a).] Upon [the plan's] receipt of the notice of levy, the IRS stepped into [the taxpayer's] shoes and acquired all his rights in the IRA, including his right to liquidate the mutual fund shares in his IRA and withdraw the cash proceeds."

United States v. Novak, 476 F.3d 1041, 1062 (9th Cir. 2007).

Accordingly, for purposes of determining whether the recapture provision under section 72(t)(4)(A) applies in the light of a levy action commenced under section 6330, if the levy on the property occurs as the result of the IRS's "stepping into the shoes of the taxpayer," then that action should be treated as nonvoluntary on the part of the taxpayer and accordingly, not subject to either the 10-percent additional tax under section 72(t) or the recapture tax pursuant to section 72(t)(4)(A). If,

however, the taxpayer has a right to access the funds, and does so in an effort to alleviate his tax liability, or does so in a manner (such as in Arnold v. Commissioner, supra) that modifies the series of substantially equal payments under section 72(t)(4)(A) for his personal gain, then that voluntary action should trigger the recapture penalty under section 74(t)(4)(A).

Based on the foregoing, we reject petitioner's argument that the recapture penalty under section 72(t)(4)(A) supersedes the levy exception provision under section 72(t)(2)(A)(vii).  In doing so, we conclude that respondent's Appeals Office did not act in an arbitrary or capricious manner in disregarding petitioner's position that a levy upon his IRA account would result in not only a significant withdrawal from his account, but an unduly and overly intrusive depletion of most of the account as a result of the application of the recapture tax.

As to petitioner's argument that respondent's Appeals Office did not consider petitioner's position that the proposed levy is unfair in the light of his inability to work and medical conditions, we are unpersuaded that any issue of fact exists. Petitioner presented no evidence at the time of the hearing that he was unable to work.  He merely stated that due to a tight job market in the telecommunications industry he was unable to find "worthwhile" work.  Although petitioner did include mention in his Explanation (attached to the original OIC) that he had undergone "two angioplasty procedures", he offered no additional

evidence to show how these procedures, or the effects therefrom, had rendered him medically unable to work.  Accordingly, we hold that respondent's Appeals Office did not act in an arbitrary or capricious manner in sustaining the proposed levy action as there was no evidence presented whereby the Appeals Office could determine that the levy was unduly burdensome given petitioner's medical status.

With respect to petitioner's argument that respondent's Appeals Office failed to appreciate fully petitioner's monthly expenses in the light of the monthly amount he was receiving from his IRA, we are again unpersuaded by the lack of evidence produced by petitioner in support of this claim.  First, petitioner only provided a scant, 3-month record vis-a-vis photocopies of money orders, all of which appear to be notated to correspond to the expenses as listed on his OIC Form 433-A in anticipation of trial, none of which correspond in amount to the amounts listed on Form 433-A.  Second, we are unconvinced by the letter purportedly written by petitioner's mother that he had been renting space in her home for the past 3 years and paying her $300 per month in rent.  Petitioner produced no receipts or bank records to corroborate this claim.  Moreover, while we are convinced that petitioner did, in fact, live with his mother, we are not persuaded that he was required to spend more than one-half of his monthly income on rent, food, and clothing. Accordingly, we hold that respondent's Appeals Office did not act

in an arbitrary or capricious manner in rejecting petitioner's OICs, which were largely premised on his position that he could not afford to make a larger payment.

Finally, we note that the IRS Manual on Notice in Levy Cases provides that in deciding whether to levy on a retirement account, the Commissioner's Appeals Office should determine "whether the taxpayer's conduct has been flagrant [, with] * * * some examples of flagrant conduct [being] * * * Taxpayers who have placed other assets beyond the reach of the government [by] * * * dissipating them." Administration, Internal Revenue Manual (CCH), Notice to Levy, sec. 5.11.6.2(5) at 16,719. In this case, the Kansas City Tax Clinic candidly shared with respondent the details of petitioner's gambling addiction. We are convinced, based on this evidence, and our examination of both petitioner's financial statements and the rapidly declining IRA balances as previously detailed in this report, that a large portion of the $660,194 withdrawn from petitioner's IRA accounts between 1998 and 2003 went to fund his gambling addiction.

We are further convinced by our examination of the Bank of America statements that detail petitioner's account balances as of January 2001, that at the time that petitioner would have been required to pay his Federal income tax owing for all of the years in issue he could have done so, but elected not to for the benefit of his proclivity for racetracks and casinos. Finally, we are convinced, in the light of the above IRS Manual guidance,

and the unfortunate, yet convincing, facts presented with respect to petitioner's gambling habit, that respondent's Appeals officer did not act in an arbitrary or capricious manner in rejecting either of petitioner's OICs and, in doing so, sustaining the proposed levy action.

Accordingly, without any evidence to create a question of fact whether respondent's Appeals Office abused its discretion, respondent's motion for summary judgment will be granted, and petitioner's cross-motion for summary judgment will be denied.

<u>An appropriate order and decision will be entered</u>.